September 29, 1997
FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

**September 29, 1997**

**Cecil W. Crowson**

| | |
|---|---|
| STATE OF TENNESSEE, | ( |
| | ( |
| Plaintiff-Appellee, | ( |
| | ( |
| | ( Williamson Criminal |
| | ( |
| v. | ( Hon. Henry Denmark Bell |
| | ( Judge |
| | ( |
| | ( Appeal No. 01S01-9602-CC-00029 |
| JAMES DUBOSE, | ( |
| | ( |
| Defendant-Appellant. | ( |

For Plaintiff-Appellee:

Charles W. Burson
Attorney General & Reporter
Nashville

Michael E. Moore
Solicitor General
Nashville

Michael W. Catalano
Associate Solicitor General
Nashville

Amy Tarkington
Assistant Attorney General
Nashville

Joseph D. Baugh
District Attorney General
Franklin

For Defendant-Appellant:

Robert H. Plummer, Jr.
Franklin

**O P I N I O N**

JUDGMENT OF COURT OF CRIMINAL
APPEALS AND JUDGMENT OF TRIAL
COURT AFFIRMED.                                          REID, J.

         This case presents for review the decision of the Court of Criminal

Appeals affirming the conviction of James DuBose of first degree murder by aggravated child abuse. The defendant was sentenced to imprisonment for life. Permission to appeal was granted in order to review the trial court's ruling allowing the introduction of evidence of prior injuries suffered by the victim.

I

The victim was 16-month-old Rufus Jones, Jr., whose death was caused by the application of significant force, consistent with a blow with a fist to his abdomen, which had developed massive internal scarring as the result of older, undiagnosed injuries. The victim was pronounced dead at the hospital emergency room at approximately 9 p.m. on July 3, 1993, where he was taken by his mother, Ann Jones, and the defendant. Jones and the defendant were living together in a mobile home with her children: Rufus, the victim; Nick, age 10; and Joey, age 6. The defendant's son, Jamie, age 4, also lived with them.

The conviction is based on circumstantial evidence. On the date of the victim's death, the defendant went to work and Jones and the children spent the morning with a friend and her small child. After the defendant returned home from work, he, Jones, and all the children visited in the home of the defendant's parents until late afternoon, when they all, except Jamie, returned to the mobile home. They remained together until some time later when Jones left to get pizza and a movie video. When she left, the victim was sitting at the kitchen table eating a hot dog. According to Jones, the victim had appeared to be well in the morning but somewhat "lazy" later in the day. However, there was no evidence that he sustained any injury during the day.

Nick testified that after his mother left to get the pizza and movie, the victim fell asleep at the kitchen table and was carried by the defendant to the

bedroom.  Nick stated that while the defendant and the victim were in the bedroom he heard a noise, which the defendant explained to Nick was made by some toys falling.

When Jones returned, the defendant told her that he had put the victim to bed.  She went into the bedroom and saw him lying on a blanket on the floor.  She assumed the child was asleep.  Later, the defendant went into the bedroom and returned carrying the victim.  He told Jones the child was not breathing.  The victim vomited when his mother gave him mouth to mouth resuscitation; otherwise, he exhibited no sign of life.

At the hospital, the defendant stated that he found the child pinned between the bed and the wall.  His explanation was that the victim had dropped his bottle behind the bed and had been trying to retrieve it.  The detective who investigated the death visited the home that night.  He made numerous photographs and measured the distance between the bed and the wall.  When the detective returned the next day, he found under the bed a baby's bottle which had not been there the previous night.  The detective also noticed that the bed had been moved a few inches farther away from the wall.  Lastly, the detective discovered a rolled up blanket which the mother identified as the blanket on which the victim had been lying on the night he died.  The blanket was damp in one spot with what appeared to be blood and mucus.  The stain on the blanket was consistent with a sample of blood taken from the victim.

The medical examiner, Dr. Julia Goodin, performed the autopsy.  She testified that the victim's abdominal cavity was full of blood, there were contusions on the intestines, and lacerations or tearing on the connective tissue to the small intestines, which likely were caused by a knuckle on the perpetrator's fist.  The injury which caused the tearing probably had occurred within 24 hours of

death and certainly had occurred within 36 hours of death. Exterior bruises on the victim corresponded to the internal abdominal injuries. The bruises were consistent with blows to the abdomen with a fist. According to Dr. Goodin, this type of blow typically is administered by an adult, not another child. In Dr. Goodin's opinion, the defendant's explanation of what happened was inconsistent with the injuries she observed. She testified that there was no indication that the child had been pinned in any way, nor were there signs of asphyxiation.

Dr. Goodin also testified that there was evidence of other internal injuries in the abdominal area which were at least a week old and could have been several months old. She stated that the old injuries had been caused by significant force and had resulted in internal scarring. Her conclusion was that the mass of scarring caused by the old injuries prevented the soft connective tissue from moving freely in the abdominal cavity when force was applied, thereby resulting in the tearing which caused the child to bleed to death. In addition, Dr. Goodin testified that on various parts of the body there were exterior contusions and bruises, some of which were as much as a week old. She also found evidence of prior contusions to the back of the scalp area which had resulted in the development of scar tissue between the scalp and the skull. The medical examiner did not associate the injuries to the victim's head with his death.

In addition to the injuries found by the medical examiner, proof was introduced concerning an incident in March 1993 when the victim's fingers were injured while he was with the defendant; the defendant told Jones that the victim had smashed his fingers in the cabinet door. Because the defendant had taken the child to his sister's house, the mother did not see the fingers until later the next day. Two of the victim's fingernails were missing and there was pus on the fingers. She immediately took the victim to the emergency room where he was treated by Dr. Woodrow Wilson. Dr. Wilson concluded that the injuries were

inconsistent with the fingers being accidentally smashed in a cabinet door, although it was possible that the victim could have sustained the injury by placing his fingers in the hinged door of the cabinet and then pulling his fingers while pushing against the cabinet door. He described the injury as a "superficial degloving," in which the skin is peeled off and there are no fractures. He suspected child abuse and discussed his concerns with the mother.

Harvey Wood, the mother's brother-in-law and also the defendant's uncle, testified that the defendant showed hostility toward the victim. Wood explained that the defendant disliked the victim's father, Rufus Jones, Sr. The defendant had told Wood that the victim "looked just like his daddy, sounded like his daddy, cried like his daddy and that he couldn't stand that little bastard either." Wood testified that on one occasion he had seen the defendant strike the victim on the head. Wood also stated that the defendant had tried to get him to change his testimony.

The defendant's basic defense was that there was not sufficient admissible evidence to prove the charge. The defendant initially claimed that the child's death was accidental - that it was caused by his becoming caught between the bed and the wall. At trial, he insisted that there was no evidence showing the cause of the fatal injury, that the evidence showed the injury could have been caused accidentally by the children at play or intentionally by persons other than the defendant. The Court of Criminal Appeals, however, found that the evidence, though circumstantial, was sufficient to support the conviction. The defendant's application for permission to appeal the sufficiency of the evidence was not granted. The only issue before this Court is the admissibility of the evidence of prior injuries.

**II**

The defendant contends that the trial court committed reversible error in allowing the jury to hear evidence of the prior injuries sustained by the victim. He objects specifically to the testimony of the mother and of the emergency room physician about the injury to the victim's fingers in March 1993 and the testimony of the medical examiner about the prior internal and external injuries. The State contends that the evidence was admissible to show the cause of death, and also that the injury was caused "knowingly, other than by accidental means," as provided in Tenn. Code Ann. § 39-15-401(a)(1991). The defendant would invoke Rule 404(b) of the Tennessee Rules of Evidence to exclude the evidence of prior injuries. He contends that the evidence was not probative of any element of the offense and, further, even if relevant its probative value was outweighed by unfair prejudice.

**III**

The first issue to be resolved is the standard of review of the trial court's decision regarding the admissibility of the evidence. The standard of review where the decision of the trial judge is based on the relevance of the proffered evidence under Rules 401[1] and 402[2] is abuse of discretion. Neil P. Cohen et al., Tennessee Law of Evidence § 401.5 at 86-87 (3d ed. 1995); Dockery v. Board of Professional Responsibility, 937 S.W.2d 863, 866 (Tenn. 1996); cf. State v. Porterfield, 746 S.W.2d 441, 450 (Tenn. ), cert. denied, 486

---

[1] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

[2] "All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible." Tenn. R. Evid. 402.

U.S. 1017 (1988). Where the admissibility of the proffered evidence must also comply with Rule 404(b)[3] and the trial court has followed the procedure mandated by that rule, it appears that the same standard, abuse of discretion, would be applicable. See State v. Brewer, 932 S.W.2d 1, 24 (Tenn. Crim. App. 1996). However, in view of the strict procedural requirements of Rule 404(b), the decision of the trial court should be afforded no deference unless there has been substantial compliance with the procedural requirements of the Rule. The procedure for determining admissibility of evidence of other "crimes, wrongs, or acts" is set forth in the rule.[4] The court must find on "evidence heard outside the jury's presence" that the evidence is relevant to a "material issue" and that the probative value of the evidence is not "outweighed by the danger" that the evidence will cause unfair prejudice. Tenn. R. Evid. 404(b)(1)(2) & (3); State v. McCary, 922 S.W.2d 511, 513-14 (Tenn. 1996). If the evidence is admitted, the trial court "must upon request state on the record" the material issue to which the evidence is relevant and the court's reasons for admitting the evidence. Id. at 404(b)(2). The trial court did not comply fully with these procedures. However, where, as in this case, there was a hearing outside the presence of the jury, but the trial court failed to determine and state on the record the material issue to

---

[3]Rule 404(b) provides as follows:

  (b) Other Crimes, Wrongs, or Acts. -- Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

  (1) The court upon request must hold a hearing outside the jury's presence;

  (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

  (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

[4]Rule 404(b) was drafted in response to this Court's opinion in State v. Parton, 694 S.W.2d 299 (Tenn. 1985). In Parton, "the Court established precise procedures to emphasize that evidence of other crimes should usually be excluded." Tenn. R. Evid. 404(b) advisory commissions's comments.

which the evidence was relevant and also failed to find that the probative value of the evidence was not outweighed by the danger of unfair prejudice, the determination of admissibility will be made by the reviewing court on the evidence presented at the jury out hearing.

**IV**

Since in this case the Court must apply a different standard of review if Rule 404(b) is applicable, the next issue to be considered is whether the admissibility of the evidence of prior injuries is controlled by Rules 40l and 402 or whether Rule 404(b) is also applicable. The admissibility of the evidence of prior injuries to the victim's abdominal area, and the evidence of prior injuries to the victim's hand and head, must be considered separately.

In regard to the evidence of prior injuries to the victim's abdominal area, the defendant contends that the medical examiner's testimony regarding prior injuries is irrelevant unless the injuries can be attributed to the defendant. That interpretation is unduly restrictive of the meaning of relevance. Rule 404(b) applies to "evidence of other crimes, wrongs or acts" of the person on trial, and excludes evidence of such acts only when offered for the purpose of proving character or trait of character. State v. Nichols, 877 S.W.2d 722, 732 (Tenn. 1994), cert. denied, 513 U.S. 1114 (1995). Evidence of crimes, wrongs or acts, if relevant, are not excluded by Rule 404(b) if they were committed by a person other than the accused and are only conditionally excluded if committed by the accused. Since the evidence admitted did not show the identity of the person who caused the prior abdominal injuries sustained by the victim, it was not inadmissible under Rule 404(b) as reflecting upon the character of the defendant.

Consequently, the admissibility of the evidence is dependent upon

its relevance under rules 401 and 402. The relevance of proffered evidence is determined by the issues presented for resolution in the trial, which, in turn, are determined by the elements of the offense charged and the defense asserted by the accused. As stated in the Advisory Commission Comment to Rule 401, "[t]o be relevant, evidence must tend to prove a material issue."

The defendant was charged with and convicted of first degree murder by aggravated child abuse, which was defined as: "A reckless killing of a child less than thirteen (13) years of age, if the child's death results from aggravated child abuse, as defined by § 39-15-402, committed by the defendant against the child." Tenn. Code Ann. § 39-13-202(a)(4) (Supp. 1993) (current version at § 39-13-202(a)(2) (Supp. 1996)). The offense of aggravated child abuse is defined in the statute as follows: "A person is guilty of the offense of aggravated child abuse who commits the offense of child abuse as defined in § 39-15-401 and: (1) The act of abuse results in serious bodily injury to the child; or (2) A deadly weapon is used to accomplish the act of abuse. ..." Tenn. Code Ann. § 39-15-402 (a)(1991). The offense of child abuse was defined as follows: "Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare is guilty of a Class A misdemeanor." Tenn. Code Ann. § 39-15-401 (a)(1991)(amended 1994)(emphasis added). These statutes required, for conviction of first degree murder by aggravated child abuse, proof that the defendant knowingly, other than by accidental means, inflicted upon the victim serious bodily injury that caused his death.

Here, the evidence of prior injuries to the abdominal area was admissible to show causation. According to Dr. Goodin, the scarring of the abdominal area caused by the prior injuries created a condition which allowed the

later blows to cause the injuries which resulted in the victim's death. This evidence was relevant to causation regardless of the identity of the perpetrator. The external bruises to the abdomen were consistent with the internal injuries and were in fact evidence of the same injuries. Thus the prior injuries to the abdominal area were admissible because they directly related to the cause of death and also because they tended to prove that the injuries were caused by someone intentionally and not accidentally.

The next issue is whether the probative value of the evidence of the abdominal injuries was outweighed by the danger of unfair prejudice. Since, as stated above, Rule 404(b) is not applicable to this evidence, its admissibility must be considered under Rule 403, Tennessee Rules of Evidence.[5] Rule 403 permits a court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." (Emphasis added.) The Court has stated that unfair prejudice is "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978); see also State v. McCary, 922 S.W.2d at 515. The medical examiner's testimony regarding prior injuries to the victim was not particularly graphic or emotional. Rather, the testimony simply recounted in a clinical manner the location of various bruising and scarring on the victim's body. There was no supposition as to who caused the prior injuries. The Court concludes that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice as required for exclusion under Rule 403, and, therefore, that the trial judge did not abuse his discretion in allowing its admission.

---

[5] " Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

The remaining issues concern the admissibility of the testimony about the injury to the victim's fingers in 1993 and the testimony regarding injuries to his head. Because, on the evidence, the defendant could be identified as the person responsible for these injuries, admissibility of the evidence is governed by Rule 404(b). First, the evidence that the defendant was responsible for the hand and head injuries must be clear and convincing as required under Rule 404(b) analysis. See State v. McCary, 922 S.W.2d at 514; State v. Parton, 694 S.W.2d at 303. Then, two issues must be determined: whether there was a material issue, other than conduct conforming with a character trait, to which evidence of the injury to the victim's fingers was relevant; and, if so, whether the probative value of the evidence outweighed the danger of unfair prejudice. Id. The test for relevance under Rule 401, that the evidence tends to prove a material issue, is the same under Rule 404(b). However, the test in Rule 404(b) for balancing probative value against prejudicial effect differs from that established in Rule 403. To be excluded under Rule 403, the danger of unfair prejudice must "substantially outweigh" the probative value. Under Rule 404(b), however, the danger of unfair prejudice must simply "outweigh" the probative value. The restrictive approach of Rule 404(b) recognizes that evidence of other crimes, wrongs or acts carries a significant danger of unfair prejudice. Tennessee Law of Evidence, § 404.7 at 172.

The evidence of the injury to the victim's hand in 1993 and that he was struck on the head by the defendant was relevant to two closely related material issues: intent and absence of accident. The statutes defining the offense require proof that the act of abuse was committed "knowingly" and not by "accidental means."[6] Since the defendant claimed the injury was accidental and, apparently in the alternative, if the injury was inflicted intentionally it could have

_____

[6]Intent and absence of accident are closely related factual issues. Tennessee Law of Evidence, §§ 404.9, 404.10.

been done by others, proof that he was responsible for the prior injuries was highly probative of both his intent to harm the child and also that the fatal injury was not accidental.

The evidence, though probative of intent and lack of accident, undoubtedly was prejudicial. But the issue is whether the evidence was <u>unfairly</u> prejudicial. The evidence was highly relevant to material issues, it did not introduce any extraneous issues and it did not cause the jury to decide the case on an improper basis. Cf. <u>Woodson v. Porter Brown Limestone Co</u>., 916 S.W.2d 896, 907-908 (Tenn. 1996). On this record, the prejudice was not unfair. Therefore, the Court concludes that the probative value of the evidence was not outweighed by the danger of unfair prejudice. Accordingly, the evidence was properly admitted.

**V**

One additional matter should be mentioned. Where the evidence of other crimes, wrongs, and acts may reflect upon the character of the accused, the procedure set forth in Rule 404(b) should be followed, even though the evidence is offered to prove a material fact not necessarily related directly to the accused. If, after hearing the evidence, the trial court finds that the evidence does not implicate the accused, the weighing of probative value against unfair prejudice will be made pursuant to Rule 403. If the court finds that the evidence reflects upon the character of the accused, the weighing will be made pursuant to Rule 404(b).

**VI**

The judgment of the Court of Criminal Appeals affirming the defendant's conviction and sentence is affirmed.

Costs are taxed against the defendant.

_____
Reid, J.

Concur:

Anderson, C.J., Drowota, and
   Holder, JJ.

Dissenting Opinion:

Birch, J.