**STATE of Tennessee, Appellee,**

**v.**

**Cynthia ROBERSON and Rhodney Roberson, Appellants.**

Court of Criminal Appeals of Tennessee, at Jackson.

Jan. 23, 1998.

Application for Permission to Appeal Denied by Supreme Court Feb. 1, 1999.

Charles S. Kelly, Sr., Dyersburg, TN, for the appellant Cynthia Roberson.

Mike Mosier, Jackson, TN, for the appellant Rhodney Roberson.

John Knox Walkup, Attorney General & Reporter, Elizabeth T. Ryan, Asst. Attorney General, Nashville, TN, Clayburn Peeples, District Attorney General, Garry Brown, Asst. District Attorney General, Trenton, TN, for appellee.

## OPINION

PEAY, J.

The defendants were indicted jointly for first-degree murder by aggravated child abuse. After a joint trial, the jury convicted Cynthia Roberson ("CR") of aggravated assault; it convicted Rhodney Roberson ("RR") of the indicted offense. After a hearing, CR was sentenced as a standard Range I offender to six years incarceration;[1] RR was sentenced to life imprisonment and fined fifty thousand dollars ($50,000). In this appeal as of right, both defendants contend that the indictment is fatally defective because its allegation of the culpable mental state is insufficient. RR also challenges the sufficiency of the evidence and further contends that the trial court erred in permitting the State to introduce evidence of other child abuse with which he was not charged. CR contends that her conviction must be reversed because aggravated assault is not a lesser included offense of first-degree murder by aggravated child abuse, and that the evidence is insufficient to support her conviction. We agree with CR that aggravated assault is not a lesser included offense of first-degree murder by aggravated child abuse and therefore reverse that conviction and remand this matter for further proceedings. We affirm RR's conviction.

## FACTS

At approximately noon on November 19, 1993, Dean Miller was summoned to the defendants' house in Gibson County. Miller worked for the Gibson County Emergency

---

1. The judgment form contained in the record does not reflect a fine. The transcript of the trial indicates that the jury imposed a maximum fine of ten thousand dollars ($10,000). The record does not contain a transcript of the sentencing hearing.

Medical Services. Upon arriving at the house, he found Tiffany McCaig lying covered on the couch. Tiffany was CR's two-year-old daughter and RR's stepdaughter. Miller testified that Tiffany had been warm when he found her, and that he had noticed some bruising in her neck area. Because she had "no pulse, no respirations" when he found her, he immediately began administering CPR. After an ambulance arrived, he rode with the child to the hospital, continuing his CPR efforts. He was not successful, however, in reviving Tiffany.

Dr. O'Brien Clary Smith, the assistant medical examiner for Shelby County, performed the autopsy on Tiffany. He testified that she had had about twenty-two bruises in the head and face area and additional bruises on her neck, chest, left hip, and "the back and buttock region." He testified that these bruises had ranged in age from less than six hours to "about forty-eight to seventy-two hours" prior to her death. He further testified that the bruises had been inflicted "by anywhere from a moderate to a severe degree of force" during "at least four separate episodes" and that "a fist could [have] produce[d] these types of injuries." Additionally, he testified that, "It's my medical opinion that these bruises are most consistent with the child being struck as opposed to falling down." According to Dr. Smith, Tiffany died from peritonitis, "directly attributable to a tear in the portion of the intestine known as the duodenum." The tear, testified Dr. Smith, had been caused by "Massive blunt trauma—massive blunt force was applied to the abdomen with sufficient force to cause the intestine to tear.... [M]ost of the time these injuries of this type are seen with blows by a fist, a kick, or in a traffic accident they can be caused by a person slamming into the steering wheel when they're unrestrained.... Additionally, falls in the twenty to twenty-five foot range can—can cause this type of injury." Dr. Smith testified that he did not believe, in his medical opinion, that Tiffany's injury had been caused by a fall. He further testified that it was his medical opinion that the injury had occurred eighteen to thirty-six hours prior to her death, with his best estimate being twenty-four hours.

CR testified that she had seen RR treat Tiffany roughly on many occasions and that, on the evening of November 18, 1993, while RR was bathing Tiffany, she had heard "two thuds that sounded like a book dropping on the floor." After these thuds, she testified, she had heard Tiffany "grunt." She testified that RR had told her that he'd kicked his boots off, but that he had been wearing them when he came out of the bathroom. She further testified that, when Tiffany had come out of the bathroom, "She was staggering like she was drunk, but she wasn't crying. She wasn't complaining." CR claimed that she had not known Tiffany was in danger on the night of November 18 and that she had not known she was severely injured. She also denied knowing how Tiffany had become severely injured.

Both CR and Mrs. W.I. Sherbit, RR's grandmother, testified that Tiffany had fallen across her stomach on the stone hearth during the afternoon of November 17, 1993. CR also testified that Tiffany had fallen once more that day.

## ANALYSIS

Both defendants initially challenge the validity of the indictment, claiming that it is fatally defective because it fails to allege the necessary culpable mental state. In making this argument, the defendants rely on this Court's decision in State v. Roger Dale Hill, Sr., No. 01C01–9508–CC–00267, Wayne County, 1996 WL 346941 (Tenn.Crim. App. filed June 20, 1996, at Nashville). We first note that our Supreme Court has reversed the Hill case. State v. Hill, 954 S.W.2d 725 (Tenn.1997). Moreover, this case is distinguishable from Hill. The indictment at issue in Hill contained no allegation of a mens rea. The Indictment at issue in this case, however, does include an allegation of the defendants' culpable mental state. In pertinent part, the indictment provides that the defendants "did commit murder in the first degree by recklessly killing Tiffany McCaig, a child less than 13 years of age, said child's death resulting from aggravated child abuse as defined by Section 39–15–402, Tennessee Code Annotated, which aggravated child abuse was committed by the [defen-

dants] against the child" (emphasis added). The indictment tracks the language of the statute, which provides that, "First degree murder is: A *reckless* killing of a child less than thirteen (13) years of age, if the child's death results from aggravated child abuse, as defined by § 39–15–402, committed by the defendant against the child ." T.C.A. § 39–13–202(a)(4) (1993 Supp.) (emphasis added). Thus, the indictment includes the *mens rea* required by the statute.

The defendants contend that the culpable mental state required to be alleged is "knowing" because the statutory definition of aggravated child abuse [2] incorporates by reference the statutory definition of child abuse, which occurs when "Any person ... knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare." T.C.A. § 39–15–401(a) (1991). We disagree. The defendants in this case were not indicted for aggravated child abuse. They were indicted for first-degree murder. The *mens rea* element for the form of first-degree murder for which they were indicted is that the killing have been committed recklessly. There is nothing inconsistent about a reckless killing being committed in the course of knowing child abuse. Indeed, it is very similar to a felony murder: "A *reckless* killing of another committed in the perpetration of" several enumerated crimes, each of which has its own *mens rea* element. T.C.A. § 39–13–202(a)(2) (Supp.1993).[3] As pointed out by the State, indictments charging felony murder do not have to allege the *mens rea* element of the underlying felony. *See, e.g., State v. Kimbrough,* 924 S.W.2d 888, 890 (Tenn.1996) ("recklessness as a *mens rea* would suffice to support a conviction for" felony murder). Nor did the indictment in this case have to allege the culpable mental state required for aggravated child abuse. Since the indictment did allege the *mens rea* required for the murder, it is sufficient and this issue is without merit.

We next address RR's contention that the evidence is insufficient to support his conviction for first-degree murder by aggravated child abuse. When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Cabbage,* 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973).

■ The statute under which RR was convicted provides that "First degree murder is: A reckless killing of a child less than thirteen (13) years of age, if the child's death results from aggravated child abuse, as defined by § 39–15–402, committed by the defendant against the child." T.C.A. § 39–13–202(a)(4) (Supp.1993). Aggravated child abuse is defined as "child abuse as defined in § 39–15–401 and: (1) The act of abuse results in serious bodily injury to the child; or (2) A deadly weapon is used to accomplish the act of abuse." T.C.A. § 39–15–402(a) (1991). Child abuse in turn occurs when "Any person ... knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare." T.C.A. § 39–15–401(a) (1991). Thus,

---

2. T.C.A. § 39–15–402 (1991).

3. The definition of felony murder has since been amended and the "reckless" element deleted. *See* T.C.A. § 39–13–202(a)(2) (1997).

the State must have proved, beyond a reasonable doubt, that RR knowingly inflicted a serious bodily injury upon Tiffany with the result that he recklessly killed her,[4] or that he knowingly neglected her, resulting in serious bodily injury and death, and such neglect constituted a reckless killing. The proof in this case established that Tiffany died as a result of a tear in her duodenum which led to fatal peritonitis. Dr. Smith testified that the tear had been caused by the application of "massive blunt force" to her abdomen, that most injuries of this type were caused by "a fist, a kick, or in a traffic accident", and that he did not believe, in his medical opinion, that Tiffany's injury had been caused by a fall. He further testified that the multiple bruises on her body were, in his medical opinion, "consistent with the child being struck as opposed to falling down." According to Dr. Smith, the fatal injury had been inflicted eighteen to thirty-six hours prior to Tiffany's death.

CR testified that, on the evening before Tiffany's death, RR had taken her into the bathroom and given her a bath. While they were in there, CR testified, she had heard two thuds and that Tiffany had grunted after she had heard the thuds. She also testified that, when Tiffany had come out of the bathroom after her bath, she staggered "like she was drunk." Tiffany was dead by noon the next day. This proof was more than sufficient to establish that RR had knowingly inflicted a serious bodily injury on Tiffany, thereby recklessly killing her. This issue is without merit.

RR next contends that the trial court erred by allowing the State to introduce evidence of bruising to Tiffany's body which did not relate to the cause of her death. He argues that the admission of this evidence requires us to reverse his conviction under our Supreme Court's decision in *State v. Hale*, 840 S.W.2d 307 (Tenn.1992).

■ We first note that the defendant inadequately reserved this issue at trial. The State introduced both testimony and photo-

graphs to prove the existence of multiple bruises on Tiffany's body which were not related to the actual cause of her death. However, defense counsel only objected to the photographs, stating,

> It's my contention that *those photographs* are not relevant to the causation—to the blow to the abdomen that eventually resulted in the death of the child. The statute talks about serious bodily injury, and I think that *those photographs* are more prejudicial than they are probative and in addition we feel like that the Medical Examiner's testimony will more than suffice to explain the nature of the injuries to the child.[5]

Defense counsel did not object to the testimony by numerous witnesses about the bruising they had observed on the victim which was not related to her death. Accordingly, this issue is waived with respect to all but the photographic proof.

■ Irrespective of RR's reservation of this issue at trial, however, we find it to be without merit. *Hale*, 840 S.W.2d at 307, dealt with a different child abuse murder statute and this Court has previously held that *Hale* does not control this issue under the statute which RR was convicted of violating. *See State v. James Dubose*, No. 01C01–9405–CC–00160, Williamson County, 1995 WL 504803 (Tenn.Crim.App. filed Aug. 25, 1995, at Nashville)[6] (noting that the statute under which RR was convicted was enacted subsequent to the *Hale* decision and deleted that portion of the statute which the *Hale* Court had found unconstitutional). Rather, we look to our Supreme Court's recent decision in *State v. DuBose*, 953 S.W.2d 649 (Tenn.1997), in which it addressed the admissibility of prior injuries in a prosecution for first-degree murder by aggravated child abuse.

Pursuant to *DuBose*, the initial determination to be made is "whether the admissibility of the evidence of prior injuries is controlled

---

4. There was no allegation or proof that a deadly weapon was used to accomplish the act of child abuse.

5. Emphasis added.

6. *Affirmed, State v. DuBose*, 953 S.W.2d 649 (Tenn.1997).

by [Tennessee] Rules [of Evidence] 401 [7] and 402 [8] or whether Rule 404(b) [9] is also applicable." *DuBose*, 953 S.W.2d at 653 (footnotes added). Where the evidence does not indicate who caused the prior injuries, Rule 404(b) is not applicable and therefore its admissibility is determined under Rules 401 and 402. *Id.* at 653.

In this case, the evidence of the multiple bruises on Tiffany's body did not indicate who had caused them. Accordingly, we need determine only whether the evidence was relevant to proving a material issue and, if so, whether it should have been excluded because its probative value was "*substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn.R.Evid. 403 (emphasis added). We note that our standard of review in this determination is abuse of discretion. *DuBose*, 953 S.W.2d at 654.

In *DuBose*, the Court ruled that evidence of some of the prior injuries was admissible to show causation "because they directly related to the cause of death and also because they tended to prove that the injuries were caused by someone intentionally and not accidentally." 953 S.W.2d at 654. In the instant case, Dr. Smith testified that

> because you have fairly significant bruising of the head and you have bruising of the back, it's possible that they may in some regard be related to her death by causing the child to be impaired or unable to seek assistance by having the child either

knocked unconscious or stunned. Additionally, the bruise to the middle of the back ... has been seen in other cases where the massive forces that are applied to the front of the abdomen and the back is driven into some sort of supporting surface—a wall, a floor, or something like that and the back will actually be bruised because the body is slammed up against it. In that regard the bruise to the back may be related to the cause of death.

Dr. Smith cautioned that he could not state such a relation "with a medical certainty." However, under *DuBose*, we find the doctor's testimony sufficient to render admissible the proof of the bruises to Tiffany's head and back.

With respect to the other bruises, the State was required in this case to prove that RR either inflicted the fatal injury or so neglected Tiffany as to result in her death. In either event, RR must have acted "knowingly, other than by accidental means." T.C.A. § 39–15–401(a) (1991). To the extent that the State was attempting to prove that RR was guilty of first-degree murder by aggravated child abuse through his neglect of Tiffany, the non-fatal bruising was relevant to establish what RR had known about her physical condition. That is, it was relevant to prove that RR knew Tiffany was in danger and, further, to negate any ignorance or mistake on his part as to whether she needed medical attention. The trial court, referring to this Court's opinion in the appeal of the first trial of this matter,[10] ruled that the evidence was material to proving the absence of mistake or accident, Tiffany's physical con-

---

7. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

8. "All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible."

9. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admis-

sible for other purposes. The conditions which must be satisfied before allowing such evidence are: (1) The court upon request must hold a hearing outside the jury's presence; (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice."

10. *State v. Cynthia Roberson and Rhodney Roberson*, No. 02C01–9503–CC–00059, Gibson County, 1995 WL 765009 (Tenn.Crim.App. filed Dec. 28, 1995, at Jackson).

dition, her obvious need for medical attention and the defendants' neglect thereof, and to attack the defendants' credibility. We do not think the court below abused its discretion in so ruling. Nor do we think it abused its discretion in failing to find that the probative value of this proof was substantially outweighed by the danger of unfair prejudice or the other factors cited by Rule 403. The evidence of the non-fatal injuries was not gruesome; the injuries were not remote in time from the fatal trauma; they were not life-threatening; and there was no direct proof that RR had caused them. The dangers and considerations with which Rule 403 is concerned were simply minor when weighed against the probative value of this proof. This issue is without merit.

We turn now to CR's contention that aggravated assault is not a lesser included offense of first-degree murder by aggravated child abuse and that the trial court thereby committed reversible error in so charging the jury. We agree. As set forth by our Supreme Court in *State v. Trusty*, 919 S.W.2d 305, 310–11 (Tenn.1996), "Generally, an offense qualifies as a lesser included offense only if the elements of the included offense are a subset of the elements of the charged offense and only if the greater offense cannot be committed without also committing the lesser offense.... In other words, the lesser offense may not require proof of any element not included in the greater offense as charged in the indictment."

▮▮▮▮ The elements of first-degree murder by aggravated child abuse are (1) a reckless killing; (2) of a child under the age of thirteen; (3) resulting from aggravated child abuse; (4) which is committed by the defen-

dant against the child. T.C.A. § 39–13–202(a)(4) (Supp.1993). Importantly, there is no requirement that the defendant have any particular relationship with the victim. In contrast, "A person commits aggravated assault who, being the parent or custodian of a child ... intentionally or knowing fails or refuses to protect such child ... from an aggravated assault ... or aggravated child abuse." T.C.A. § 39–13–102(b) (Supp. 1993).[11] Thus, the elements of aggravated assault (as charged to the jury in this case) are (1) the defendant is the parent or custodian of the child; and (2) the defendant intentionally or knowingly fails or refuses to protect the child from an aggravated assault or aggravated child abuse. Thus, this type of aggravated assault requires proof of an element not included in the greater offense: that the defendant is the parent or custodian of the victim. Moreover, the greater offense can be committed without committing the "lesser" offense, because the perpetrator of the murder may be someone other than the victim's parent or custodian. A comparison of the two offenses' elements makes clear that this form of aggravated assault is not a lesser included offense of first-degree murder by aggravated child abuse. Accordingly, the trial court committed reversible error in charging the jury with this type of aggravated assault and the conviction cannot stand. Therefore, we reverse CR's conviction for aggravated assault and remand this matter for a new trial. Because CR has already been acquitted of the murder charge as well as aggravated child abuse (with which the jury was also charged), her new trial must be limited to criminally negligent homicide and child abuse or child neglect.[12]

11. The statute setting forth the offense of aggravated assault includes several methods by which the crime may be committed. *See* T.C.A. § 39–13–102 (Supp.1993). However, in this case, the only form of aggravated assault with which the jury was charged is that set forth above. Accordingly, that is the only form of aggravated assault which we analyze in this issue.

12. In its charge, the trial court instructed the jury to consider, in order, the crimes of first-degree murder by aggravated child abuse, aggravated child abuse, aggravated assault, criminally negligent homicide, and child abuse or child neglect. Assuming the jury followed its instruc-

tions, as we presume it did, *see, e.g., State v. Blackmon*, 701 S.W.2d 228, 233 (Tenn.Crim.App. 1985), it convicted CR of aggravated assault only after determining that she was not guilty of the two greater offenses. Accordingly, she cannot be retried on those charges. U.S. Const.Amend. V; Tenn. Const. Art. I Sec. 10. However, the jury did not determine whether or not she was guilty of the lesser offense of criminally negligent homicide or the lesser included offense of misdemeanor child abuse. Accordingly, she may be retried on those charges. *See State v. Maupin*, 859 S.W.2d 313, 318 (Tenn.1993) ("There having been no factual resolution of [the defendant's] guilt or innocence on the lesser offenses, she can

In her final issue, CR challenges the sufficiency of the evidence which led to her conviction for aggravated assault. In light of our determination that this offense should not have been charged to the jury in this case, we find it unnecessary to determine whether the evidence was sufficient to support this conviction.

We reverse Cynthia Roberson's conviction for aggravated assault and remand this matter for further proceedings in accordance with this opinion. We affirm Rhodney Roberson's conviction.

PAUL G. SUMMERS and DAVID G. HAYES, JJ., concur.

be tried for those offenses without violating dou-       ble jeopardy.'')