IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2005

## JAMES DUBOSE v. TONY PARKER, Warden, STATE OF TENNESSEE

**Appeal from the Circuit Court for Lake County**
**No. 05-CR-9705     R. Lee Moore, Jr., Judge**

---

**No. W2005-01320-CCA-R3-HC  - December 9, 2005**

---

The Defendant, James DuBose, appeals the denial of his petition for a writ of habeas corpus. The Defendant, serving a sentence of life in prison for first degree murder, raises four issues on appeal: 1) that the claims raised in his petition for habeas corpus relief were not previously adjudicated; 2) that his judgment of conviction is void because his indictment failed to allege an offense; 3) that his judgment of conviction is void because it is based on an unconstitutional statute; and 4) that the trial court erred in failing to appoint counsel for his habeas corpus proceedings. Finding the denial of the Defendant's petition was appropriate, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

James DuBose, Pro Se.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; and Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The murder conviction at issue in this case results from the death of a small child, the son of the Defendant's girlfriend. The pertinent facts of this case were summarized by the Tennessee Supreme Court as follows:

> The victim was 16-month-old Rufus Jones, Jr., whose death was caused by the application of significant force, consistent with a blow with a fist to his abdomen, which had developed massive internal scarring as the result of older, undiagnosed injuries. The victim was pronounced dead at the hospital emergency room at

approximately 9 p.m. on July 3, 1993, where he was taken by his mother, Ann Jones, and the defendant. Jones and the defendant were living together in a mobile home with her children: Rufus, the victim; Nick, age 10; and Joey, age 6. The defendant's son, Jamie, age 4, also lived with them.

The conviction is based on circumstantial evidence. On the date of the victim's death, the defendant went to work and Jones and the children spent the morning with a friend and her small child. After the defendant returned home from work, he, Jones, and all the children visited in the home of the defendant's parents until late afternoon, when they all, except Jamie, returned to the mobile home. They remained together until some time later when Jones left to get pizza and a movie video. When she left, the victim was sitting at the kitchen table eating a hot dog. According to Jones, the victim had appeared to be well in the morning but somewhat "lazy" later in the day. However, there was no evidence that he sustained any injury during the day.

Nick testified that after his mother left to get the pizza and movie, the victim fell asleep at the kitchen table and was carried by the defendant to the bedroom. Nick stated that while the defendant and the victim were in the bedroom he heard a noise, which the defendant explained to Nick was made by some toys falling.

When Jones returned, the defendant told her that he had put the victim to bed. She went into the bedroom and saw him lying on a blanket on the floor. She assumed the child was asleep. Later, the defendant went into the bedroom and returned carrying the victim. He told Jones the child was not breathing. The victim vomited when his mother gave him mouth to mouth resuscitation; otherwise, he exhibited no sign of life.

At the hospital, the defendant stated that he found the child pinned between the bed and the wall. His explanation was that the victim had dropped his bottle behind the bed and had been trying to retrieve it. The detective who investigated the death visited the home that night. He made numerous photographs and measured the distance between the bed and the wall. When the detective returned the next day, he found under the bed a baby's bottle which had not been there the previous night. The detective also noticed that the bed had been moved a few inches farther away from the wall. Lastly, the detective discovered a rolled up blanket which the mother identified as the blanket on which the victim had been lying on the night he died. The blanket was damp in one spot with what appeared to be blood and mucus. The stain on the blanket was consistent with a sample of blood taken from the victim.

The medical examiner, Dr. Julia Goodin, performed the autopsy. She testified that the victim's abdominal cavity was full of blood, there were contusions on the intestines, and lacerations or tearing on the connective tissue to the small

-2-

intestines, which likely were caused by a knuckle on the perpetrator's fist. The injury which caused the tearing probably had occurred within 24 hours of death and certainly had occurred within 36 hours of death. Exterior bruises on the victim corresponded to the internal abdominal injuries. The bruises were consistent with blows to the abdomen with a fist. According to Dr. Goodin, this type of blow typically is administered by an adult, not another child. In Dr. Goodin's opinion, the defendant's explanation of what happened was inconsistent with the injuries she observed. She testified that there was no indication that the child had been pinned in any way, nor were there signs of asphyxiation.

Dr. Goodin also testified that there was evidence of other internal injuries in the abdominal area which were at least a week old and could have been several months old. She stated that the old injuries had been caused by significant force and had resulted in internal scarring. Her conclusion was that the mass of scarring caused by the old injuries prevented the soft connective tissue from moving freely in the abdominal cavity when force was applied, thereby resulting in the tearing which caused the child to bleed to death. In addition, Dr. Goodin testified that on various parts of the body there were exterior contusions and bruises, some of which were as much as a week old. She also found evidence of prior contusions to the back of the scalp area which had resulted in the development of scar tissue between the scalp and the skull. The medical examiner did not associate the injuries to the victim's head with his death.

In addition to the injuries found by the medical examiner, proof was introduced concerning an incident in March 1993 when the victim's fingers were injured while he was with the defendant; the defendant told Jones that the victim had smashed his fingers in the cabinet door. Because the defendant had taken the child to his sister's house, the mother did not see the fingers until later the next day. Two of the victim's fingernails were missing and there was pus on the fingers. She immediately took the victim to the emergency room where he was treated by Dr. Woodrow Wilson. Dr. Wilson concluded that the injuries were inconsistent with the fingers being accidentally smashed in a cabinet door, although it was possible that the victim could have sustained the injury by placing his fingers in the hinged door of the cabinet and then pulling his fingers while pushing against the cabinet door. He described the injury as a "superficial degloving," in which the skin is peeled off and there are no fractures. He suspected child abuse and discussed his concerns with the mother.

Harvey Wood, the mother's brother-in-law and also the defendant's uncle, testified that the defendant showed hostility toward the victim. Wood explained that the defendant disliked the victim's father, Rufus Jones, Sr. The defendant had told Wood that the victim "looked just like his daddy, sounded like his daddy, cried like his daddy and that he couldn't stand that little bastard either." Wood testified that on

one occasion he had seen the defendant strike the victim on the head. Wood also stated that the defendant had tried to get him to change his testimony.

The defendant's basic defense was that there was not sufficient admissible evidence to prove the charge. The defendant initially claimed that the child's death was accidental--that it was caused by his becoming caught between the bed and the wall. At trial, he insisted that there was no evidence showing the cause of the fatal injury, that the evidence showed the injury could have been caused accidentally by the children at play or intentionally by persons other than the defendant.

State v. DuBose, 953 S.W.2d 649, 650-51 (Tenn. 1997).

The Defendant was found guilty by jury verdict of first degree murder of a child by aggravated child abuse, and the trial court sentenced the Defendant to life in prison. The Defendant's conviction was affirmed on direct appeal. DuBose, 953 S.W.2d at 649. The Defendant subsequently filed a petition for post-conviction relief, which was denied by the trial court and affirmed by this Court. See James Dubose v. State, No. M2000-00478-CCA-R3-CD, 2001 WL 120727 (Tenn. Crim. App., Nashville, Feb. 1, 2002). The Defendant's first petition for a writ of habeas corpus, alleging erroneous jury instructions on the "reckless" mens rea requirement of his conviction offense, was denied. This denial was also affirmed by this Court. See James DuBose v. State, No. M2004-01021-CCA-R3-HC, 2004 WL 2346010 (Tenn. Crim App., Nashville, Oct. 15, 2004).

In May of 2005, the Defendant filed a second pro se petition for a writ of habeas corpus, alleging his judgment of conviction was void because of a defective indictment. In denying this petition, the trial court issued an order stating:

In viewing the indictment, the Court finds the following:

(1) the language of the indictment is sufficient to meet the constitutional requirements of notice to the accused of the charge against which the accused must defend;
(2) the indictment provided an adequate basis for entry of the judgment;
(3) the indictment provided protection from double jeopardy, and
(4) the indictment is concise, understandable, and in accordance with T.C.A. § 40-13-202.
. . . [T]he indictment in this case appears to be sufficient and the conviction based thereon is valid.

Petitioner also has previously pursued habeas corpus relief in Wayne County, Tennessee, making the same or similar allegations. The petition was summarily dismissed and affirmed on appeal.

The judgment is not void, nor has the sentence expired. This issue also has previously been litigated. The petition is, therefore, denied.

-4-

This appeal followed.

**ANALYSIS**

The Defendant outlines four separate issues on appeal. However, the Defendant's statements of his four issues in his appellate brief are not precise and are quite lengthy, as they address both the issue presented for review and also summarize his arguments on the issue. It appears that the Defendant now claims that he should be granted relief because he has raised new claims that were not adjudicated in his first petition for habeas corpus relief. He argues that his indictment was faulty because it both failed to state an offense and was based upon an unconstitutional statute. He also claims that he was denied the assistance of appointed counsel for his habeas corpus proceedings.

**I. Procedural Issues**

We begin by noting that the Defendant has attached a 139 page "Appendix to Brief," containing a myriad of documents to which he refers in both his appellate brief and reply brief. However, documents attached to appellate briefs but not certified into the record cannot be considered as part of the record on appeal. See Jamie Lee Pittman v. State, No. E2001-00546-CCA-R3-PC, 2002 WL 407226, at *1 (Tenn. Crim. App., Knoxville, March 15, 2002) (citing State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988) ("When an accused seeks appellate review of an issue in this court, it is the duty of the accused to prepare a record which conveys a fair, accurate, and complete account of what transpired with respect to the issues which form the basis of the appeal.")). See also State v. Matthews, 805 S.W.2d 776, 783 (Tenn. Crim. App. 1990) (holding that transcripts attached to the appellant's brief were not considered by this Court because they were not made part of the record); Tenn. R. App. P. 28(a).

Additionally, evidence recounted in the text of an appellant's brief that is not properly included in the record on appeal also will not be considered by this Court. See State v. Mark Allen Seyler, No. 01C01-9801-CR-00050, 1999 WL 357348, at *3 n.3 (Tenn. Crim. App., Nashville, June 4, 1999) ("Facts recited in a party's brief, but not included in the record on appeal, are not evidence."). See also Tenn. R. App. P. 24(b). Accordingly, the documents appended to the Defendant's brief, as well as those portions of his appellate brief argument referring to documents not part of the record on appeal, were not considered by this Court in the adjudication of this case.[1]

**II. Standard of Review**

Article 1, section 15 of the Tennessee Constitution guarantees the right to seek habeas corpus relief, and Tennessee Code Annotated sections 29-21-101 et seq. codify the applicable procedures for seeking a writ. However, the grounds upon which our law provides relief are very narrow. See Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999). Habeas corpus relief is available in Tennessee "only when it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered that a convicting court was without jurisdiction or authority to sentence a

---

[1] We note that several documents in the Defendant's "Appendix," to which he cited in his appellate brief and reply brief, were duplicates of documents included in the Technical Record. We have considered all documents properly certified and included in the record on appeal.

defendant, or that a defendant's sentence of imprisonment or other restraint has expired." <u>Archer v. State</u>, 851 S.W.2d 157, 164 (Tenn. 1993).

Additionally, the Tennessee Supreme Court has emphasized the distinction between void and voidable judgments with regard to a petition for a writ of habeas corpus. A "void judgment" is one in which "the judgment is facially invalid because the court did not have the statutory authority to render such a judgment," while a "voidable judgment" is one "which is facially valid and requires proof beyond the face of the record or judgment to demonstrate its voidableness." <u>Dykes v. Compton</u>, 978 S.W.2d 528, 529 (Tenn. 1998) (citations omitted). Habeas corpus relief is available for void judgments, but is inappropriate for merely voidable judgments. <u>Id.</u> Furthermore, it is permissible for a trial court to summarily dismiss a petition for habeas corpus relief, without the appointment of counsel and without an evidentiary hearing, if there is nothing on the face of the judgment to indicate that the conviction addressed therein is void. <u>Passarella v. State</u>, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994).

### III. Issues on Appeal

A. Issues not previously litigated

In his first issue on appeal, the Defendant claims the trial court erred when it "dismissed" his case because his claims had been adjudicated in a previous proceeding for habeas corpus relief. To support this claim the Defendant argues that his current claims are legally and/or factually different from any issues he may have raised in prior proceedings. Thus, the Defendant claims, the trial court "erred in summary [sic] dismissing the case summary [sic], because the claim(s) must be different, and if not it still was not adjudge [sic] up on [sic]."

The basis of the Defendant's appeal of his denial of habeas corpus relief, while outlined as four distinct issues, is essentially this: his judgment of conviction is void because the offense for which he was convicted required proof of two separate and conflicting mens rea requirements.[2] In the Defendant's first habeas corpus petition, he alleged that his judgment was void because of an erroneous jury instruction on the required mens rea element of "reckless" that rendered his indictment invalid. This Court affirmed denial of the Defendant's first habeas corpus petition, noting that his alleged error would, at the most, render his judgment voidable and not void. <u>See</u> <u>James DuBose</u>, 2004 WL 2346010, at *1. Now, in the Defendant's second habeas corpus petition, he has again alleged that his indictment is invalid because of problems stemming from the two different mens rea requirements. However, this time he asserts that his indictment is invalid because it failed to state an offense, and because it was based upon an unconstitutional statute.

We question whether the Defendant has sufficiently distinguished his legal arguments so as to raise new claims. Indeed, even now on appeal of the denial of his second petition for habeas corpus relief, the Defendant repeatedly refers to his jury instructions on "reckless" in both his

---

[2]The 1993 statute under which the Defendant was convicted criminalized the "reckless" killing of a child if the child's death resulted from aggravated child abuse, which was defined as the "knowing" treatment or neglect of a child so as to cause injury. <u>See</u> Tenn. Code Ann. §§ 39-13-202(a)(4) and 39-15-402 (1993).

appellate brief and reply brief as part of his arguments supporting his supposedly "new" claims.[3] Accordingly, we are of the opinion that justice would have been served if the trial court had found that the issues presented in this case had indeed been previously determined; the prior ruling established the law of the case; and therefore the Defendant's claims could not be revisited in a second habeas corpus proceeding. See Morgan v. State, 445, S.W.2d 477, 478 (Tenn. Crim. App. 1969).

Nonetheless, the trial court in this case did not summarily dismiss the Defendant's petition by stating that the issues had been previously adjudicated, as claimed by the Defendant. Rather, the trial court examined the merits of the Defendant's claims and found that the indictment withstood scrutiny. Accordingly, the trial court held that the Defendant's judgment of conviction was not void, and denied relief. Thus, the Defendant's argument that the trial court erred by dismissing this claim as "previously determined" is misplaced and without merit.

B. Indictment fails to state an offense

The Defendant next claims that he is entitled to relief "due to a [sic] invalid indictment, in that it does not state an offense, and inform the [Defendant] with reasonable certainty of the nature and cause of the accusation lodged against him in order to prepare a defense." In support of this assertion, the Defendant argues that he was "charged with a 'Result of Conduct' offense, that is a Homicide, the conviction is not for a 'Result of Conduct' offense, therefore the conviction is not a homicide." Thus, the Defendant argues, his "indictment did not inform him with reasonable certainty, that he would be defending against a First Degree Murder, that was not a 'Result of Conduct' offense, that did not require no knowledge [sic] of any injury resulting mustless [sic] death or bodily injury." To the extent that we understand the Defendant's claim as an assertion that his indictment, which referenced two different mental state requirements, failed to state an actual offense, we disagree.

A valid indictment is essential to vest jurisdiction in the convicting court; consequently a defective indictment may deprive a court of jurisdiction. See Wyatt v. State, 24 S.W.3d 319, 323 (Tenn. 2000). The Defendant is correct in his assertion that the validity of an indictment and the "efficacy of the resulting conviction may be addressed in a petition for habeas corpus when the indictment is so defective as to deprive the court of jurisdiction." Dykes, 978 S.W.2d at 529.

In 1997, the Tennessee Supreme Court established criteria to determine whether an indictment properly performs its essential constitutional and statutory duties. See State v. Hill, 954 S.W.2d 725, 726-27 (Tenn. 1997). In Hill, the court held that

> for offenses which neither expressly require nor plainly dispense with the requirement for a culpable mental state, an indictment which fails to allege such

---

[3]While by no means a comprehensive list, the Defendant cites to the previously adjudicated issue of the jury instructions on "reckless" three times on page eight and again on page five of his appellate brief, and on page ten of his reply brief.

mental state will be sufficient to support prosecution and conviction for that offense so long as

(1) the language of the indictment is sufficient to meet the constitutional requirements of notice to the accused of the charge against which the accused must defend, adequate basis for entry of a proper judgment, and protection from double jeopardy;

(2) the form of the indictment meets the requirements of Tenn. Code Ann. § 40-13-202; and

(3) the mental state can be logically inferred from the conduct alleged.

Id.

The Defendant was charged with, and convicted of, first degree murder of a child by aggravated child abuse, which was defined as: "A reckless killing of a child less than thirteen (13) years of age, if the child's death results from aggravated child abuse, as defined by § 39-15-402, committed by the defendant against the child." Tenn. Code Ann. § 39-13-202(a)(4) (1993) (current version at § 39-13-202(a)(2) (2005)). The offense of aggravated child abuse was defined by statute as follows: "A person is guilty of the offense of aggravated child abuse who commits the offense of child abuse as defined in § 39-15-401 and: (1) The act of abuse results in serious bodily injury to the child; or (2) A deadly weapon is used to accomplish the act of abuse . . . ." Tenn. Code Ann. § 39-15-402(a) (1993). The offense of child abuse was defined as follows: "Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare is guilty of a Class A misdemeanor." Tenn. Code Ann. § 39-15-401(a) (1993).

The Defendant's indictment charged him as follows: "[the Defendant] unlawfully, feloniously and recklessly did cause the death of a child less than thirteen (13) years of age . . . which child's death resulted from knowingly and other than by accident, treating said child in a manner to inflict serious bodily injury, in violation of Tennessee Code Annotated Section 39-13-202." In this case, the indictment provided sufficient information to 1) put the Defendant on notice as to the charge against which he must defend, 2) furnish the trial court with adequate basis for the entry of a proper judgment, and 3) protect the Defendant from double jeopardy. See Hill, 954 S.W.2d at 727. Under such circumstances, even an indictment that failed to allege the required mental state(s) would still be valid. Nonetheless, in this case, the Defendant's indictment did expressly allege both the "reckless" and "knowing" culpable mental state elements of his conviction offense.

Additionally, the Defendant's indictment tracked both the language of the statute proscribing first degree murder of a child by aggravated child abuse, and the language of the relevant child abuse statutes. See State v. Hammonds, 30 S.W.3d 294, 302 (Tenn. 2000) (holding that an indictment containing allegations couched in the pertinent language of the applicable statute is ordinarily sufficient to meet constitutional and statutory requirements). Furthermore, the indictment in this case cited to the first degree murder statute. The Tennessee Supreme Court has held that reference to the conviction offense statute in an indictment "provide[s] notice to the defendant of the

applicable mens rea, notice of the offense upon which to enter the judgment, and protection from subsequent prosecution on the same offense." Sate v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999). Moreover, the indictment complies with the statutory form requirements of Tennessee Code Annotated section 40-13-202.

For these reasons, we conclude that the Defendant's indictment was not void for failing to state an offense. This issue is without merit.

### C. Indictment references an unconstitutional statute

In his third issue, the Defendant alleges that his conviction "is void, because of an indictment that is invalid, in that it does not state an offense, nor does it provide notice to the accused of the offense charged, because of an unconstitutional statute." To support this argument, the Defendant again raises the issue of result of conduct offenses versus nature of conduct offenses, and argues that "the statute and [the Defendant's] conviction placed a mandatary presumption on a Reckless killing," and that "if the death resulted from the predicated felony, that could not legally prove a Reckless killing." The Defendant further asserts that "[a] statute that indicate [sic] a mandatory presumption would be improper and unconstitutional if it relieve's [sic] the state of the burden of proving an element of the offense." The Defendant also argues that the offense for which he was convicted was based upon an unconstitutional statute because "[p]rior to 1995, the predicated felony could not support a conviction for First Degree Murder," citing to State v. Bobby G. Godsey, No. E1997-00207-CCA-R3-DD, 2000 WL 1337655, (Tenn. Crim. App., Knoxville, Sept. 18, 2000). We disagree with both arguments.

Though inartfully phrased, we believe the argument the Defendant attempts to make is that the offense for which he was convicted required two conflicting mental states, i.e. a "reckless" killing and "knowing" child abuse, and was therefore unconstitutional. While it is correct that the child murder statute under which the Defendant was convicted criminalized the "reckless" killing of a child if the child's death resulted from aggravated child abuse, which was further statutorily defined as the "knowing" treatment or neglect of a child so as to cause injury to the child, the two separate mental state elements do not conflict, nor do they render the child murder statute unconstitutional. The Tennessee Supreme Court has previously explained and justified the dual mental requirements of this particular offense as the simple addition of a reckless homicide to the offense of aggravated child abuse, stating: "the [offense of first degree murder of a child by aggravated child abuse] simply requires an additional element that, along with the knowing act of child abuse or neglect, the person consciously disregards a substantial and unjustifiable risk that death could occur." State v. Ducker, 27 S.W.3d 889, 895 (Tenn. 2000).

In addition to the supreme court's implicit holding in Ducker that the statute in question was constitutionally sound, this Court has also previously held that "[t]here is nothing inconsistent about a reckless killing being committed in the course of knowing child abuse." State v. Roberson, 988 S.W.2d 690, 693 (Tenn. Crim. App. 1998). Moreover, in State v. Torres, this Court upheld the same 1993 version of the first degree murder of a child by child abuse statute when challenged with an

identical dual mental state argument. We stated then that "the requirement of two different mental states in the 1993 version of Tenn. Code Ann. § 39-13-202(a)(4) renders the statute neither vague on its face nor vague as applied to the appellant's case." State v. William Pierre Torres, No. E1999-00866-CCA-R3-DD, 2001 WL 245137, at *15 (Tenn. Crim. App., Knoxville, March 13, 2001), rev'd on other grounds, State v. Torres, 82 S.W.3d 236 (Tenn. 2002). We find the same reasoning applies to the Defendant's claim in this case.

The Defendant also argues that the statute under which he was convicted must be unconstitutional based upon his interpretation of one line from an unreported case issued by this Court in 2000. The Defendant cites to State v. Godsey, in which this Court stated: "Prior to 1995, aggravated child abuse was not one of the enumerated felonies capable of supporting a felony murder conviction." Godsey, 2000 WL 1337655, at *10. The Defendant relies on this quote to support his claim that he could not be indicted or convicted of murder by aggravated child abuse for an offense committed in 1993. Thus, the Defendant argues, the statute under which he was convicted, and to which his indictment cited, must have been unconstitutional.

While it is correct that aggravated child abuse was not added to Tennessee's felony murder statute until 1995, see Tenn. Code Ann. § 39-13-202(a)(2) (1995), first degree murder of a child by aggravated child abuse was a separate first degree murder offense in 1993, see Tenn. Code Ann. § 39-13-202(a)(4) (1993). The Defendant's indictment clearly gave him notice that he was charged with first degree murder of a child by aggravated child abuse, and not felony murder. Furthermore, the 1993 offense of murder of a child by child abuse, though subsequently recodified and placed under Tennessee's felony murder statute, was not unconstitutional when it was in effect.

Accordingly, we hold the Defendant's assertion that his indictment was invalid because it was based upon an unconstitutional statute is without merit.

D. Failure to appoint counsel

In the Defendant's last issue on appeal, he argues that the trial court erred in "summary [sic] dismissing the case, when the [Defendant] clearly had a right to appointment of counsel," referencing McLaney v. Bell, 59 S.W.3d 90 (Tenn. 2001). However, unlike the defendant in Bell, the Defendant in this case has failed to demonstrate that the record of his underlying proceedings clearly shows that his judgment is void, and that appointed counsel could have brought the pertinent documents necessary to prove the void judgment to the court's attention. See Id.

The burden of proving that the judgment is void rests with the defendant. See Wyatt, 24 S.W.3d at 322. Furthermore, there is no constitutional right to counsel in a habeas proceeding. See Weatherly v. State, 704 S.W.2d 730, 732 (Tenn. Crim. App. 1985). Although both Tennessee statutes and the Supreme Court Rules allow for appointment of counsel in habeas corpus cases where necessary, there is nothing in the record that indicates that assistance of counsel was necessary in this case. See Id. (holding that a defendant is not entitled to appointed counsel when his pro se habeas corpus petition is competently and carefully drawn so as to fully explicate his complaint and grounds

upon which his complaint is based). Accordingly, no error was committed when the trial court refused to appoint counsel for the Defendant's habeas corpus proceedings. This issue is without merit.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the trial court's dismissal of the Defendant's petition for habeas corpus relief.

_____

DAVID H. WELLES, JUDGE