IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE v. ANTONIO BRIGGS

**Direct Appeal from the Criminal Court for Shelby County
No. 96-09730, W. Fred Axley, Trial Judge**

—————————

**No. W1999-00280-CCA-R3-CD - Decided May 19, 2000**

—————————

The appellant appeals his conviction by a Shelby County jury for the offense of sexual battery. On appeal, the appellant argues (1) the legal sufficiency of the convicting evidence and (2) the trial court's admission of evidence of a prior bad act. After consideration of these issues, we conclude that no error of law exists requiring reversal. Accordingly, we affirm the judgment of conviction.

**Tenn. R. App. P. 3(b) Appeal as of Right; Judgment of the Criminal Court affirmed.**

HAYES, J. delivered the opinion of the court, in which WELLES and GLENN, J.J. joined.

Brett B. Stein, Memphis, Tennessee, attorney for appellant, Antonio Briggs.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, J. Ross Dyer, Assistant Attorney General, William L.Gibbons, District Attorney General, and William Bond, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The appellant, Antonio Briggs, was convicted of the class E felony of sexual battery and was sentenced to two years confinement in the Shelby County Correctional Center.[1] In this appeal as of right, he raises two issues for this court's review:

> I. Whether the evidence is sufficient for a rational trier of fact to find the appellant guilty of sexual battery; and
>
> II. Whether the trial court committed error by permitting the victim to testify that the

---

[1]The Shelby County Grand Jury returned a one count indictment charging the appellant with rape.

appellant was placed under a peace bond in another court.

After review of the record, we affirm the judgment entered by the Shelby County Criminal Court.

**Background**

Kimberly Meabon and the appellant were involved in an intimate relationship over several years resulting in the birth of two children. The relationship ended and the parties separated. Between 5:00 and 5:30 a.m. on July 10, 1996, the appellant along with his brother drove to the residence of Ms. Meabon and her children. Ms. Meabon refused the appellant admittance to her home. The appellant pulled open the screen door which was locked. The appellant then grabbed his victim and the two struggled, however, Ms. Meabon was able to break away and "[run] around the corner to [her] sister's house." The appellant pursued Ms. Meabon and "pulled [her] back and drug [her] in the truck." The appellant drove back to Meabon's residence. Upon nearing her residence, Meabon noticed that her children were outside crying. Meabon implored the appellant to release her; her pleas, however, were ignored. The appellant then "backed up in the driveway" and "pulled [Meabon] in the bedroom." Meanwhile, Ms. Meabon's oldest child called the police.

Inside the bedroom, the appellant threw Ms. Meabon on the bed. The appellant unzipped his pants and removed her underwear. Ms. Meabon pleaded with the appellant "Please don't do this." "[H]e inserted [his penis in her vagina], but he couldn't do anything, because the police had burst in by that time and they caught him on top of [her]."

Trenill Humphrey, the victim's sister, corroborated the victim's testimony regarding the events which took place in front of Humphrey's residence on the morning of July 10. The victim's five year old son, Antonio Briggs, Jr., testified that, on July 10, he was awakened from sleep by his mother hollering. He then heard the voice of his father, the appellant. He further stated , "I saw my daddy try to make my mamma do something with him" "[i]n my mamma's room." "My daddy was on top of my mamma, and my mamma said, 'Get off of me and get out of my house.'"

Memphis Police Officer Daniel L. Barham testified that he was dispatched to the residence of Ms. Meabon at approximately 5:30 a.m. Upon arriving, he observed a late model pickup truck outside the residence, a sole male occupied the vehicle. Inside the residence, the victim's child informed him "the 'meanie' is hurting my mom." The child then led Officer Barham to his mother's bedroom. Outside the room, Barham could hear a "female pleading, 'Please quit hurting me, quit.'" Upon entering the room, he discovered the appellant on top of the victim "in a sexual manner with her still pleading to him." Barham confirmed "[h]e was definitely having sex with her." Barham grabbed the appellant and pulled him off the victim.

In his defense, the appellant presented the testimony of his brother, Tony Briggs, his mother,

Pearlie Briggs, and his wife, Melissa Briggs. Tony Briggs testified that the appellant picked him up at his residence on July 10 between 1:00 and 2:00 a.m. The two of them were going to work, but the appellant wanted to stop and visit with his children for a few minutes. Briggs testified that he had to be at work at 5:00 a.m. He confirmed that the appellant drove to Meabon's residence and that the appellant knocked on the door. He stated that Meabon let the appellant in her home and shortly thereafter saw Meabon leave the residence and walk to her sister's house. The next event that Mr. Briggs testified to was that the police arrived and arrested his brother.

Pearlie Briggs testified that Kimberly Meabon would "come over" to her residence "all the time" to ask for money. Specifically, a week before the instant offense, Meabon and her sister came to her house. The appellant was on crutches at this time. During this visit, Meabon asked the appellant for money for the children. The appellant did not have any money to give Meabon. Meabon became angry and left. The following week, Mrs. Briggs testified that Meabon called her at work and told her that "she was going to fix Antonio, because he didn't give her no money."

Melissa Briggs testified that she and the appellant were married on January 6, 1997. She stated that she was present during the incident related by Pearlie Briggs. She explained that there was some animosity between her and Meabon because Meabon felt that Melissa's children by the appellant were treated better than her children by the appellant.

Based upon this proof, the jury found the appellant guilty of the lesser offense of sexual battery.


## I. Sufficiency of the Evidence

The appellant challenges the sufficiency of the convicting evidence. Specifically, he argues that "based upon the conflict of the witnesses that testified in this case . . . the victim and her witnesses were simply not telling the truth about the facts of the case." The appellant's challenge is one of witness credibility. In essence, the appellant asks this court to trespass upon the jury's duty to evaluate the credibility of the witnesses and reweigh the evidence introduced at the trial by reassessing the credibility of the victim and the other State's witnesses. It is not the prerogative of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. See generally State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995); State v. Boling, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992). We decline the appellant's invitation to overturn his conviction by making a choice different from that of the jury.

Additionally, we conclude that the evidence is more than sufficient to support the jury's verdict. The victim testified that the appellant, without her consent, forced sexual contact upon her. See Tenn. Code Ann. §39-13-505(a) (1996 Supp.). The testimony of the victim's sister, the victim's son, and a police officer corroborated the victim's testimony. This proof is more than sufficient to establish the elements of sexual battery. See Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781,

2789 (1979); Tenn. R. App. P. 13(e). This issue is without merit.

## II. Victim's testimony regarding "Peace Bond"

During the State's case-in-chief, Ms. Meabon testified that the appellant knew that he was not permitted at her residence. Defense counsel objected on the basis that he believed that the victim was going to testify regarding "an injunction in another Court," which would be unduly prejudicial and totally irrelevant. The court overruled the objection finding the testimony was relevant to establish the appellant's state of mind. The victim was then permitted to testify that "[she] had went and got a peace-bond on him." The appellant now complains that the court committed reversible error in permitting the victim to testify regarding the "peace bond." Specifically, he contends that evidence of the "peace bond" qualifies as a prior bad act and is more prejudicial than probative, specifically, establishing the appellant's propensity for violence.

We agree with the appellant that the issuance of a "peace bond" against a named individual qualifies as a prior bad act. A "peace bond" may issue where a complaint is made that a person has threatened or is about to commit an offense on the person or property of another and there is just reason to fear the commission of a future offense. See Tenn. Code Ann. §§ 38-3-107; 38-3-109 (1997). See also Tenn. Code Ann. §§ 38-4-102; 38-4-106 (*repealed* 1993). Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Nonetheless, such evidence may be admissible for other purposes. Id. Specifically, other acts may be admitted to prove such issues as motive, intent, knowledge, absence of mistake or accident, common scheme or plan, identity, completion of the story, opportunity, and preparation. Neil P. Cohen et al., Tennessee Law of Evidence § 404.6 (3d ed. 1995). However, before evidence of other crimes, wrongs, or acts may be admitted for other purposes, the following conditions must be satisfied:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Id. A fourth prerequisite to admission is that the court find by clear and convincing evidence that the appellant committed the prior criminal act. Advisory Commission Comments, Tenn. R. Evid. 404(b).

In reviewing a trial court's decision to admit or exclude evidence, an appellate court may

disturb the lower court's ruling only if there has been an abuse of discretion. See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). However, the trial court's determination is only entitled to deference if it has substantially complied with the procedural requirements of Rule 404(b). Id. In the present case a 404(b) hearing was neither requested nor conducted. Accordingly, the trial court's ruling that evidence of the "peace bond" was admissible to show the appellant's "state of mind" is afforded no deference.

After defense counsel's objection, the court allowed the evidence without complying with the mandates of Rule 404(b). No jury-out hearing was held. The court did not weigh the probative value of the evidence against the danger of unfair prejudice. No proof was introduced to establish by clear and convincing evidence the existence of the peace bond nor was proof introduced establishing the circumstances leading to its issuance. Moreover, other than establishing the appellant's propensity for violence against the victim, we fail to see how the evidence of a peace bond establishes the appellant's "state of mind" for sexual battery. Had the court followed the requirements of the rule, a correct ruling would have required the exclusion of this evidence. In sum, we find that the challenged evidence introduced to establish state of mind was irrelevant and was outweighed by its prejudicial effect and, thus, inadmissible. See Tenn. R. Evid. 403.

Notwithstanding our ruling that the admission of evidence of the "peace bond" was error, we have previously found the evidence sufficient to support the appellant's conviction for sexual battery. Because we find the convicting evidence so overwhelming, we are unable to conclude that evidence of the "peace bond" affected the jury's verdict. Accordingly, we find the errors complained of harmless. T.R.A.P. 36(b); Tenn. R. Crim. P. 52(a).

After review of the record and the applicable law in the present case, we conclude that the appellant has not shown his entitlement to appellate relief. Accordingly, the judgment of conviction entered by the trial court is affirmed.