# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### June 2000 Session

## STATE OF TENNESSEE v. BOBBY EARL PERKINS

### Appeal from the Circuit Court for Haywood County
### No. 4114     Steve Stafford, Judge

---

### No. W1999-01368-CCA-R3-CD - Decided July 28, 2000

---

The defendant, Bobby Earl Perkins, appeals his conviction for especially aggravated robbery, contending that the trial court erred (1) by allowing a witness to testify about the defendant's statement a year before the robbery that he planned to rob the victim, (2) by allowing a police officer to testify to statements the victim made regarding the defendant, and (3) by sentencing the defendant to twenty-one years. We affirm the conviction, but we modify the sentence to twenty years.

**Tenn. R. App. P. 3 Appeal; Judgment of the Circuit Court Affirmed as Modified**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY, and JOHN EVERETT WILLIAMS, JJ., joined.

J. Thomas Caldwell, Ripley, Tennessee, attorney for appellant, Bobby Earl Perkins.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Clayburn L. Peeples, District Attorney General; and Larry Hardister, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Bobby Earl Perkins, was convicted by a jury in the Haywood County Circuit Court of especially aggravated robbery and was sentenced as a Range I, violent offender to twenty-one years in the Department of Correction without parole. In this appeal as of right, the defendant contends that the trial court erred (1) by allowing a witness to testify about the defendant's statement a year before the robbery that he planned to rob the victim, (2) by allowing a police officer to testify to the statements the victim made to him regarding the defendant, and (3) by sentencing the defendant to twenty-one years. We affirm the conviction, but we modify the sentence to twenty years.

At the trial, the victim, Bertha Hudson, testified as follows: On July 5, 1998, about 7:30 p.m., she was talking on the telephone when the defendant came to her house and asked if she could take care of his child in her daycare. She told the defendant to wait outside until she finished talking

on the telephone. When she finished the call, the defendant entered the house with a gun and demanded her money. She first gave the defendant an empty billfold, then another billfold from which he took forty dollars. The defendant claimed she was hiding something, but she said she had no more money. The defendant struck her several times on the head and knocked her unconscious. She said that she had time to observe her assailant and recognized him as a person she had seen very often passing her house on his way to and from school. The victim's niece brought a school yearbook to the hospital from which she identified the defendant. She also identified the defendant from photographs that were shown to her by a police detective. As a result of the attack, the victim had multiple surgeries for fluid on the brain, suffered a stroke, and lost an eye.

Brownsville Police Detective Johnny Blackburn testified that he showed photographs to the victim in the hospital and that she immediately identified the defendant. He said the defendant and the victim lived within a quarter mile of each other.

Eli Pirtle testified that he was in the yard of a house on the corner of the victim's street when he saw the defendant walking in the direction of the victim's house. He said that later, he saw the defendant running back with a pistol in his hand. The defendant told him, "You hadn't seen me if anybody asks."

Brownsville Police Sergeant Mike Smothers testified that he was the first officer on the scene and that he found the victim to be in bad shape. He said that she was "pretty much" excited and told him that although she did not know the defendant's name, she saw him almost every day as he walked past her house to school.

Shawn Jones testified that the victim is his aunt. He said that about a year before the robbery, he and the defendant were walking past the victim's house when the defendant pointed to the house and said, "You see that house right there? I'm going to rob that house." He said he told the defendant that the defendant was talking about his aunt's house.

The defendant testified that he did not know the victim. He said that he was at home on the evening in question with Terrence Moore. He said he stayed at his house, and his girlfriend, Shandra Haley, arrived about 7:15 p.m. He denied beating or robbing the victim and asserted that he stayed home the entire evening.

Terrence Moore testified that he and the defendant were together before 7:00 p.m. at the defendant's house. He said that they were waiting for the defendant's girlfriend. Shandra Haley testified that the defendant called her on the date of the offense at 7:00 p.m. She said that she and her sister walked to the defendant's house shortly after 7:00 p.m. and that she was with the defendant until about 8:30 p.m. She said she saw a police car in the victim's yard as she walked to the defendant's house.

Bertha King testified that she lived across the street from the defendant and that she saw him standing in his yard before dark on the day of the robbery. She said she telephoned the defendant's residence after dark and spoke with the defendant.

I.

The defendant contends that the trial court erred by allowing Shawn Jones to testify that the defendant told him a year before the robbery that the defendant was going to rob Ms. Hudson. He argues that the statement was too remote in time to have any probative value and was too prejudicial to him to be admitted into evidence. He asserts that the statement's probative value is substantially outweighed by the danger of unfair prejudice pursuant to Rule 403, Tenn. R. Evid. The state responds that pursuant to Rule 404(b), Tenn. R. Evid., the trial court properly found that the statement's probative value outweighed its potential prejudicial effect relative to motive, intent and, primarily, the identity of the robber. We agree with the state, viewing Rule 404(b), not Rule 403, as controlling.

Pursuant to Rule 404(b), other crimes, wrongs, or acts by the defendant are not admissible to prove the character of a person in order to show propensity. However, when the evidence is relevant to an issue such as identity or intent, it is admissible if the trial court determines that the danger of unfair prejudice does not outweigh the evidence's probative value. See Tenn. R. Evid. 404(b), Advisory Commission Comment. When the trial court substantially complies with the procedural requirements of Rule 404(b), the standard of review of its decision regarding the admissibility of evidence is abuse of discretion. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

We believe that the trial court acted within its discretion. The trial court heard the proposed testimony in a jury-out proceeding and noted that the main issue in the case was the identity of the robber. It determined that the defendant's statement to Mr. Jones was relevant to show that the defendant was the robber and that the relevance outweighed any potential for unfair prejudice to the defendant. The record contains material evidence to support the trial court's conclusions.

II.

The defendant also contends that the trial court erred in allowing Sergeant Smothers to testify regarding the victim's statement to him that she had seen the defendant almost every day walking by her house on his way to school. He argues that the statement was inadmissible hearsay and did not qualify as an excited utterance, which is an exception to the hearsay rule of exclusion. See Tenn. R. Evid. 803(2). The state responds that the statement was admissible as an excited utterance under Rule 803(2), arguing that it related to a startling event, the robbery, while the victim was under the stress of excitement caused by the event.

Sergeant Smothers testified that he found the victim in "pretty bad shape" and that she was "pretty much" excited. The state sought to introduce the victim's statement to Sergeant Smothers as an excited utterance, but the trial court rejected that basis. Upon the state's added assertion that the statement was a prior consistent statement, the trial court admitted it because it was not being submitted for the truth of the matter asserted in the statement. Given the limited evidence and the limited nature of the trial court's ruling, including making no findings, we hesitate to conclude that the victim's statement to Sergeant Smothers was admissible as an excited utterance.

Relative to a prior consistent statement, the standard rule is that it is not admissible to bolster a witness's credibility. See State v. Braggs, 604 S.W.2d 883, 885 (Tenn. Crim. App. 1980). However, once the opponent has brought the issue of a witness's credibility to the forefront by attacking or impeaching the witness's testimony, through cross-examination or other evidence, certain types of witness rehabilitation are allowed to occur through corroborative proof in order to rebut the attack. In other words, the attack has made evidence of credibility more relevant and has opened the door to rehabilitation. See, e.g., Sutton v. State, 155 Tenn. 200, 204, 291 S.W. 1069, 1070 (1927); Graham v. McReynolds, 90 Tenn. 673, 696, 18 S.W. 272, 277-78 (1891). For instance, if the credibility of a witness is impeached by suggestion of faulty recollection, it would be relevant to prove that the witness made a consistent statement soon after the event when the matter was fresher in the witness's memory. See State v. Tizard, 897 S.W.2d 732, 746 (Tenn. Crim. App. 1994).

In the present case, the defendant questioned the victim's ability to identify him as her assailant. The record suggests that the defendant questioned the truth of the victim's claim that she saw the defendant very often in front of her house. The key issue for the defense was the identity of the robber. Under these circumstances, we believe that the record contains sufficient justification to allow the victim's statement at the scene to be introduced to corroborate her testimony by which she identified the defendant as her assailant, including how often she had seen him prevously.

We note that although admitting this statement as a prior consistent one, the trial court failed to instruct the jury that evidence of the statement should be considered only to corroborate the victim's testimony and not for the truth of the matter asserted. However, we do not believe that the defendant was harmed. First, the defendant's identity as the robber did not stem solely from the victim. More importantly, though, we believe that the statement was admissible as substantive evidence as an exception to the hearsay rule of exclusion. Pursuant to Rule 803(1.1), Tenn. R. Evid., the victim's statement to Sergeant Smothers was admissible as one identifying the defendant after perceiving him and the victim was subject to cross-examination concerning the statement at the trial. Declarations of eye-witness identifications are admissible in Tennessee. Rule 803(1.1), Advisory Commission Comment. Thus, the defendant was not harmed by the trial court's failure to instruct the jury to limit its consideration of the statement to corroboration only.

III.

Finally, the defendant contends that his twenty-one year sentence is excessive punishment. He does not specify any error or abuse of discretion in the trial court's determinations. He notes that in a case with similar facts, State v. Poole, 945 S.W.2d 93 (Tenn. 1997), the court affirmed this court's reduction of a sentence from twenty-one years to nineteen years having determined that the trial court had improperly applied an enhancement factor. The defendant also notes that the trial court originally sentenced him to twenty-one years based upon two enhancement factors but kept the sentence at twenty-one years when it decided that one of the enhancement factors was not applicable.

The record reflects that the defendant was seventeen at the time of his trial and had been transferred from juvenile court to be tried as an adult. His juvenile record reflects delinquencies relative to two thefts, a burglary, and possession of marijuana. The defendant admitted using marijuana and cocaine in the past. The defendant was fired by a McDonald's Restaurant a week before the robbery in this case occurred.

The trial court found that the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate sentencing range. See Tenn. Code Ann. § 40-35-114(1). It also concluded that the defendant had a previous history of unwillingness to comply with the conditions of a sentence that involved release into the community. See Tenn. Code Ann. § 40-35-114(8). Although it found that the defendant's history did not call for mitigation under Tenn. Code Ann. § 40-35-113(6) relative to a lack of judgment because of his age, the trial court gave his youthfulness some mitigation under Tenn. Code Ann. § 40-35-113(13), the catchall mitigating factor. It concluded that the appropriate sentence should be twenty-one years. Subsequently, after deciding that enhancement factor (8) did not apply to the defendant, the trial court determined that the twenty-one-year sentence remained appropriate.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. See Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section notes, the burden is now on the defendant to show that the sentence is improper. In this respect, we note that the defendant's contention that his sentence is excessive provides nothing upon which we may focus our review. Moreover, the fact that the trial court kept the sentence at twenty-one years even though it reduced the number of enhancement factors lends itself only to a question of the weight that the trial court should place upon the remaining factors. Left with these circumstances, the defendant would have us review the record only to determine whether or not the trial court abused its discretion. See Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments.

However, we conclude that the presumption of correctness falls in the present case, leaving us with a de novo review. This is because the trial court should not have applied enhancement factor (1) with regard to the defendant's juvenile record. Since July 1, 1995, Tenn. Code Ann. § 40-35-114(20) has provided for sentence enhancement for a defendant who "was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." With this enactment, certain things are clear relative to the legislature's intent. First, the legislature did not contemplate delinquent acts to be "criminal convictions or criminal behavior" as provided in enhancement factor (1). Second, it did not contemplate delinquency relative to misdemeanor offenses being used for enhancement purposes. See, e.g., State v. Anthony T. Jones, No. 03C01-9807-CR-00245, Knox County, slip op. at 12-13 (Tenn. Crim. App. July 14, 1999).

The record reflects that only the burglary would constitute a felony if committed by an adult. The thefts and marijuana possession would have been misdemeanors. Thus, although enhancement factor (1) does not apply, enhancement factor (20) applies relative to the defendant's delinquent conduct that would constitute the felony of burglary if committed by an adult.

The presumptive sentence for a Range I, violent offender who has committed the Class A felony of especially aggravated robbery is twenty years without parole. See Tenn. Code Ann. § 40-35-112(a)(1), -210(c), -501(i)(1). In this respect, we note that Poole, upon which the defendant relies, involved a presumptive sentence of fifteen years. In any event, each case rests upon its own merits.

In the present case, we acknowledge that our application of factor (20) is based upon less past culpable conduct than was used by the trial court in applying factor (1), and, accordingly, it carries less weight. Given the existence of this enhancement factor and the mitigating factor found by the trial court, we conclude that the defendant shall be sentenced to twenty years in the Department of Correction without parole.

We affirm the defendant's conviction, but we modify his sentence to twenty years.

_____
JOSEPH M. TIPTON, JUDGE