# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 13, 2010

## STATE OF TENNESSEE V. MYRON TAYLOR

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-04561     Chris Craft, Judge**

---

**No. W2009-02423-CCA-R3-CD  - Filed August 15, 2011**

---

Defendant, Myron Taylor, was charged with rape of a child.  Following a jury trial, Defendant was convicted of the lesser included offense of aggravated sexual battery.  He was sentenced to twelve years in the Department of Correction as a violent offender. On appeal, Defendant argues that the trial court erred by allowing the victim's sister to testify about an incident that she witnessed where Defendant pulled a cover off of the victim while she was sleeping.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Robert Wilson Jones, District Public Defender; Dianne Thackery, Assistant Public Defender; and Harry E. Sayle, III, Assistant Public Defender, Memphis, Tennessee for the appellant, Myron Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General, William L. Gibbons, District Attorney General; and Scot Bearup, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

## I. Background

When the victim was nine or ten years old and living with her aunt in Frayser, Tennessee, Defendant would sometimes stay at the house with the victim's mother.  One night, Defendant came into the victim's bedroom that she shared with her younger sister, and

"messed" with her. She testified that Defendant got down on his knees and kissed her face and began touching her body. She said, "He was motioning his hands down my body and on my thighs, across my breasts." The victim pretended to be asleep at the time.

The victim's family then moved to a house on Raleigh LaGrange with Defendant. One day, when the victim was ten years old and in the fourth grade, Defendant picked her up from school and took her home because her sister had a doctor's appointment. The victim testified that she went in the house and watched television while Defendant was on the computer. She said that Defendant rolled the computer chair up behind her and began touching her from behind. He then ripped her stockings off, pulled up her school uniform dress, removed her panties, and raped her. The victim did not tell her mother what happened because she thought her mother would not believe her. She later began bleeding. The victim also received a spanking because her mother thought that she had purposely cut her stockings. After that, Defendant continued to fondle the victim on nearly a daily basis.

The victim was eleven years old and in the fifth grade when the family moved to a house on Tarkington Street. She and her younger sister slept on bunk beds in the same room. On one occasion, Defendant attempted to show the victim a pornographic movie involving two young girls. The victim walked away and sat on the couch watching television. At some point, Defendant walked over and put his penis in her mouth. He then performed oral sex on the victim. The victim testified that on another occasion, when Defendant's daughter was in town, the victim was in her mother's room when Defendant pushed her down on the bed and raped her. She said that during this time, Defendant continued fondling her, and performed oral sex on her three or four times a week.

At some point, the victim's sister told her cousin that she saw Defendant "messing" with the victim. However, when the victim's mother and father confronted the victim, she denied it. The victim testified that she did not tell her mother what was going on because she was afraid that her mother, who had been sick, would die, and her father would go to jail for killing Defendant. The victim testified that she eventually told two friends what had been happening; however, she asked them not to say anything. The victim and her family moved several more times, and the fondling and oral sex continued until the victim was twelve years old, and her mother left Defendant, and the family moved to Alabama. During an argument with her mother, the victim finally told her what Defendant had done.

The victim's sister testified that when she was nine or ten years old, she and the victim shared a room and slept on bunk beds. One night, she saw Defendant walk into the room and pull the cover off the victim who was sleeping on the lower bunk. When the victim's sister, who had pretended to be asleep, sat up in bed, Defendant walked out of the room without saying anything. The victim's sister testified that she was later sitting outside in the car with

her cousin and said, "I saw Myron trying to pull the cover off of [the victim]." Her cousin then called the victim's father.

## II. Analysis

Defendant argues that the trial court erred in allowing the victim's sister to testify that she saw Defendant remove a cover from the victim while the victim was sleeping. At trial, Defendant argued the evidence was not relevant. Tennessee Rule of Evidence 401 provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, relevant evidence is admissible, while irrelevant evidence is inadmissible. Tenn. R. Evid. 402. However, relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tenn. R. Evid. 403. "The admissibility of evidence under Rule 403 of the Tennessee Rules of Evidence is a matter within the trial court's discretion and will not be reversed on appeal absent an abuse of that discretion." *State v. Biggs,* 218 S.W.3d 643, 667 (Tenn. Crim. App. 2006) (citing *State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997)).

Prior to trial, Defendant filed a motion in limine to exclude testimony by the victim's sister of an incident where she saw Defendant remove a cover from the sleeping victim while she and the victim were sharing a bedroom. At the pretrial hearing, defense counsel argued that the testimony had no relevant value because a rape did not occur during that incident, and the victim's sister could not testify to any rape. The State then made the following argument:

> Your Honor this is consistent with somewhat the other instances that the victim will testify that resulted in a completed fondling or penetration and it's the position of the state that this is relevant to establish that this was actually kind of an attempted act, that this gets consistent with his prior and subsequent act.

The trial court ruled that the testimony could be used as "circumstantial proof of his intent to commit these acts and his relationship with her." The court further stated: "Given the exceptions that we have for children in these kind of cases and the different dates, I am going to allow the state to put on proof of that."

Before the victim's sister testified at trial, Defendant again objected to her testimony arguing that it was not "relevant as far as any allegation of rape." During the jury-out hearing, the State noted that it was not relying on the event to establish the offense but to

"support the prior testimony of - - of the victim in this case, and gives context to - - to the - - victim's testimony as to her father and mother coming to her at a later date about alleged contact between her and the defendant." The trial court ruled: "Well, I see that it's relevant to show the relationship between the alleged victim and the defendant. It also goes to show guilty knowledge on behalf of the defendant that he might be doing something wrong or a need to conceal it." The trial court also gave the following curative instruction after the testimony:

> Ladies and gentlemen, I'm going to give what's called a curative instruction in the law, and it's something you'll need to understand.
>
> The - - at the end of all the State's proof in this case, there have been several acts testified to by the first witness.
>
> This jury's verdict must be unanimous, and so, the State is going to have to choose or elect which act they are going to rely upon in this indictment as rape of a child for you to consider.
>
> Otherwise, several of you might be considering one act and several of you the other act, but you all twelve have to consider the same act, so we an make sure that if you have a guilty verdict or a not guilty verdict, it's concerning the same thing, it's called an election.
>
> And I'll have that election for you later.
>
> The State is not going to elect this act that this witness just testified to, this alleged act.
>
> It's being offered to you not to show the guilt of the defendant, but it's only being offered to you , and you can only use it in deciding whether or not the first witness, the alleged victim in the indictment, was credible when she testified.
>
> In other words, it goes to her believability, not towards any act that the defendant is being charged with doing, because since the State is not electing this act of alleged pulling down the covers, then the defendant cannot be convicted of this act.
>
> Do you understand that? So, it can't be considered by you to decide his guilt or innocence of the charged in the indictment or any lesser included offenses,

but it's only being offered so you can decide whether or not you believe the first witness who testified.

At the hearing on Defendant's motion for new trial, the court again reiterated its ruling and said "that that testimony is admissible and also under 403 and 404(b) it meets all the qualifications for admissibility. And that the probative value of that outweighs any prejudice."

On appeal, Defendant argues that the testimony of the victim's sister was inadmissible under Rule 404(b) of the Tennessee Rules of Evidence, which dictates that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with that character trait." Tenn. R. Evid. 404(b). However, we agree with the State that Rule 404(b) is inapplicable in this case. As pointed out by the State, the victim's sister did not testify concerning any "other crimes, wrongs, or acts" by Defendant. The testimony was limited to a single incident in which the victim's sister saw Defendant pull a cover off the sleeping victim. At trial, the State noted that it was seeking to introduce the evidence to support the victim's testimony, not to establish any element of the offense.

We find that the trial court did not abuse its discretion in admitting the testimony by the victim's sister. The evidence was relevant to establish the relationship between the victim and Defendant and to support the victim's credibility by offering some corroboration of her testimony. Moreover, the trial court instructed the jury that it could only use the testimony to assess the victim's credibility, not as evidence to establish Defendant's guilt. The jury is presumed to follow the instructions of the court. *See State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004)(citations omitted). Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-5-