IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 4, 2020

FILED

06/24/2020

Clerk of the
Appellate Courts

**STATE OF TENNESSEE v. DARRON ROGERS**

**Appeal from the Circuit Court for Madison County**
**No. 18-314    Donald H. Allen, Judge**

_____

**No. W2019-00545-CCA-R3-CD**

_____

The Defendant, Darron Rogers, was convicted by a Madison County Circuit Court jury of possession of marijuana with intent to sell and possession with intent to deliver, Class E felonies; and possession of drug paraphernalia, a Class A misdemeanor.  He was sentenced to an effective term of four years in the Department of Correction.  On appeal, the Defendant argues that the trial court erred in allowing a witness to testify that she knew him by the nickname of "Weed."  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and CAMILLE R. MCMULLEN, J., joined.

George Morton Gouge, District Public Defender; and Gregory D. Gookin, Assistant Public Defender, for the appellant, Darron Rogers.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Defendant and two co-defendants, Sarah Adams and Denuraka Boykin, were indicted for possession of marijuana with intent to sell, possession of marijuana with intent to deliver, and possession of drug paraphernalia after they were caught with more

than 400 grams of marijuana during a set-up drug buy. The co-defendants both pled guilty to their charges, and the Defendant proceeded to trial.

Investigator Mark Taylor with the Madison County Sheriff's Office testified that on November 27, 2017, he was assisting the Tennessee Bureau of Investigation ("TBI") in a drug investigation. The TBI was working with a confidential source and had set up "a buy bust where somebody will . . . deliver drugs, and they'll be taken down right then." Officers observed the suspect vehicle, a black Saturn Ion, enter the Kroger parking lot. The car was driven by Ms. Adams, Mr. Boykin was in the front passenger seat, and the Defendant and a two-year-old child Ms. Adams was babysitting were in the backseat.

Ms. Adams parked the car, and officers approached after they saw that Mr. Boykin was not wearing a seatbelt. When Mr. Boykin got out of the car, officers noticed "a real strong smell of marijuana." Officers observed marijuana in plain view on the rear floorboard at the Defendant's feet. A subsequent search of the vehicle uncovered more than 400 grams of suspected marijuana. Some of the drugs were found in the glove compartment and in Mr. Boykin's pocket, but the majority was found in the backseat at the Defendant's feet. A set of digital scales was also found on the rear floorboard. The officers did not find any rolling papers or other items indicative of personal use in the car. The police took the three adults into custody, and the child Ms. Adams was babysitting was returned to his mother. Some marijuana was later found in Ms. Adams' bra. Ms. Adams gave a written statement to the police the following day. Investigator Taylor acknowledged that the statement was not shown to the prosecutor until trial.

Sarah Adams testified that she had previously pled guilty in this matter, as well as to the charge of attempted introduction of contraband into a penal facility for having marijuana in her bra when she was taken into custody. She was awaiting sentencing in her cases and was hoping that she would receive judicial diversion. With regard to the events leading up to her arrest, Ms. Adams recalled that her boyfriend, Mr. Boykin,[1] told her that he knew someone who wanted to buy marijuana and asked her to drive him to pick up the Defendant. She had never met the Defendant and only knew him by the nickname, "Weed." Ms. Adams, Mr. Boykin, and a little boy Ms. Adams was babysitting drove to the Defendant's house. The Defendant got in the backseat and asked Ms. Adams to stop by another house. The Defendant got out of the car and Ms. Adams circled the block. When she returned, the Defendant was waiting on them and had marijuana in his possession. He gave some of the marijuana to Mr. Boykin and kept the rest in the backseat. The Defendant and Mr. Boykin then directed Ms. Adams to drive to a Kroger parking lot where they were ultimately arrested.

---

[1] Ms. Adams and Mr. Boykin married between the time of the offense and the Defendant's trial.

The TBI analyzed the plant material recovered in the case. The agent confirmed that 219.90 grams of the substance was marijuana. The agent took a gross weight of the remaining plant substance in negligible packaging that was consistent in appearance with the identified marijuana. She determined that the additional amount weighed 237.96 grams, but she did not conduct a full analysis because the identified amount met the penalty threshold.

Following the conclusion of the proof, the jury convicted the Defendant as charged, and the Defendant appealed.

## ANALYSIS

On appeal, the Defendant argues that the trial court erred in allowing Sarah Adams to testify that she knew him by the nickname, "Weed." He asserts that the prejudicial effect of the nickname outweighed any probative value.

Before Ms. Adams testified, defense counsel informed the trial court that the State had just provided him with a copy of a written statement that Ms. Adams had given to Investigator Taylor after her arrest.[2] In the statement, Ms. Adams recalled the events leading to her arrest and said that she only knew the Defendant by the nickname, "Weed." Defense counsel requested that the trial court not allow Ms. Adams to refer to the Defendant's nickname because it would be unfairly prejudicial in a marijuana case. In ruling on the Defendant's motion, the trial court observed that Ms. Adams said in her statement that she only knew the Defendant by his nickname. The court determined that Ms. Adams could be "asked how she knew the person, by what name or nickname[, and] . . . if she says she only knew him by the . . . nickname, 'Weed,' then I'll let her testify to that."

The admission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion. State v. Robinson, 146 S.W.3d 469, 490 (Tenn. 2004). See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). A trial court's exercise of discretion will only be reversed on appeal if the court "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Robinson, 146 S.W.3d at 490 (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

---

[2] It appears that the State did not receive the statement until shortly before or during trial as well. Receipt of the statement is not at issue in this appeal.

When determining admissibility, a trial court must first decide if the evidence is relevant. Tenn. R. Evid. 402 ("All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible."); Robinson, 146 S.W.3d at 490. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice[.]" Tenn. R. Evid. 403.

The Defendant does not claim that Ms. Adams' testimony lacks relevance. Instead, he asserts that his nickname, "Weed," should have been excluded as too prejudicial in a marijuana case. Although "[n]icknames should generally be avoided[,]" State v. Zirkle, 910 S.W.2d 874, 886 (Tenn. Crim. App. 1995), "there is no outright prohibition against the use of nicknames." State v. Darryl Robinson, No. W2016-01803-CCA-R3-CD, 2017 WL 5952925, at *4 (Tenn. Crim. App. Nov. 29, 2017). "The trial judge should closely monitor any misuse." Zirkle, 910 S.W.2d at 886.

This court addressed a similar scenario in Ameale Hudson v. State, No. W2015-01096-CCA-R3-PC, 2016 WL 2594993 (Tenn. Crim. App. May 3, 2016), perm. app. denied (Tenn. Sept. 23, 2016), a felony murder and especially aggravated robbery case in which defense counsel moved to prohibit anyone from referring to the defendant by his nickname, "Pistol." Id. at *1. The trial court denied the motion, finding that witnesses could refer to the defendant by his nickname "where necessary for identification purposes." Id. The trial court's ruling was not reviewed on direct appeal but, on post-conviction, the defendant argued that counsel provided ineffective assistance by failing to preserve the issue for appeal. Id. at *8. This court determined that the issue had "no merit" because the nickname "was not used in a derogatory manner," the witnesses who used the nickname "only knew [the defendant] by his nickname" and the nickname was used "to identify the [defendant]," and the nickname "was relevant because it went to establishing his identity." Id. at *10. Here, as in Ameale Hudson, Ms. Adams only knew the Defendant by his nickname, and her testimony went to establishing his identity.

Moreover, there was no misuse of the Defendant's nickname. In fact, the State largely avoided using it until after the defense's cross-examination of Ms. Adams when defense counsel made issue of the fact that Ms. Adams had not met the Defendant before that day and only knew him by his nickname. Defense counsel ended his cross-examination by eliciting an affirmative response from Ms. Adams to the question of if "[it] could have been an entirely different person[?]" After such cross-examination, the State was in a position to have to clarify that Ms. Adams was certain that the Defendant

was the same person that she picked up that day, which necessarily involved asking Ms. Adams questions concerning her familiarity with the Defendant. Even so, the Defendant's nickname was only brought up twice during redirect examination. Additionally, of note, neither Ms. Adams nor the State ever referred to marijuana as "weed," only defense counsel ever referred to marijuana as "weed."

Ms. Adams' testimony was necessary for establishing the Defendant's identity as a perpetrator and was not unfairly prejudicial so as to outweigh its probative value. Furthermore, even if the trial court's ruling was erroneous, any error was harmless. The Defendant was convicted, not because Ms. Adams knew him by the nickname of "Weed," but because Ms. Adams testified that the Defendant brought marijuana to her car and the police found marijuana and digital scales at his feet. The Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE