IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 27, 2000

## STATE OF TENNESSEE v. MARCUS ANTHONY PARRAM

**Appeal from the Criminal Court for Anderson County**
**No. 98CR018B     James B. Scott, Jr., Judge**

---

**No. E2000-00581-CCA-R3-CD**
**December 20, 2000**

---

The defendant appeals his convictions for aggravated robbery and aggravated burglary, contending that the evidence was insufficient to support his convictions, that the trial court erred in allowing hearsay statements into evidence, and that the trial court erred in allowing evidence of a prior robbery committed by the defendant. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

C. Michael Robbins, Memphis, Tennessee (on appeal) and Gary Groover, Clinton, Tennessee (at trial) for the appellant, Marcus Anthony Parram.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Counsel for the State; James N. Ramsey, District Attorney General; and Janice G. Hicks, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Marcus Anthony Parram, appeals as of right his convictions for aggravated robbery, a Class B felony, and aggravated burglary, a Class C felony. The trial court imposed concurrent sentences of ten years and four years respectively. He argues that (1) the evidence is insufficient to support his convictions because the state failed to prove beyond a reasonable doubt that he was the perpetrator of the offenses, (2) the trial court erred in allowing hearsay statements into evidence under the excited utterance exception because the declarant's statements did not relate to a startling event, and (3) the trial court improperly allowed evidence of a prior robbery committed by the defendant because the danger of the evidence's unfair prejudice outweighed its probative value.

At trial, Patsy Williams, the victim, testified as follows: On December 23, 1997, around 4:30 p.m., she was alone in her Racoon Valley Road home, when she saw through a window two white men and one black man standing outside her door. She saw the defendant on the top step leading to her front door for a few seconds before he covered his face with a ski mask. She said that she would never forget his face. The defendant, who had a gun, entered the front door and told her to get on the floor or he would kill her. She got on her knees and put her head down, and the defendant stood near her in the kitchen while the other two men went through the house. She did not notice if the other two men were armed, but one had an empty duffle bag. After about fifteen minutes, she heard the men rip out her phones, and then the defendant asked, "Are you keeping your head down?" When she said that she was, she heard the back door close. At that point, she got up, went out of the front door, and ran to a neighbor's house. As she was running, she saw the three men running through her backyard and into a wooded area. When she reached the house of her neighbor, Mrs. Spurling, she told her that she had been robbed and asked her to call 911. Mrs. Spurling called 911 and within seconds, the police arrived on the scene. Later that afternoon, the police recovered two pillowcases containing items taken from her home. The pillowcases were taken from her bedroom and contained her husband's coin collection, three jewelry boxes, and other items from her home. Mrs. Williams said that the men also took other jewelry and a shotgun from the bedroom which were never recovered.

On cross-examination, Mrs. Williams said that she described the defendant to the police as being six feet tall and weighing one hundred eighty pounds, but she admitted that the defendant did not appear to weigh that much at the time of trial. She noted, however, that he was wearing a bulky jacket during the robbery. She admitted that she was the only witness to the robbery and that she had seen the defendant only three times, on the day of the robbery, at his arraignment, and again at trial. She stated that she saw the defendant's face before he pulled down his ski mask when he was on the top step leading to her front door. She testified that when she was on the kitchen floor, the defendant pulled up his ski mask, at which point she saw his face again. She stated that there was no doubt in her mind that the defendant was the person who was in her kitchen. She said that no one showed her pictures to identify the defendant, and she admitted that she did not see the defendant take a pillowcase or anything else from her house.

Lola Spurling testified that she lived next door to the victim. She stated that late in the afternoon of December 23, 1997, Mrs. Williams came to her house, told her that she had been robbed, and asked her to call the police, which she did.

Lee Ann Lively testified as follows: On December 23, 1997, around 10:30 a.m., the defendant and Tony Lively, who is not related to her, came to her apartment in Oak Ridge. She had known the defendant for a few months and Mr. Lively for a few weeks, and they had been to her apartment before. They asked if they could shower at her apartment, and she said yes but that she was leaving and to lock the apartment when they left. She left her car, a bright blue Pontiac Grand Am, in the apartment's parking lot because she rode with a friend. She left her purse and car keys in the apartment, but she did not give the defendant or Mr. Lively permission to take her car. She returned to her apartment at 12:30 p.m., but could not get in because she had forgotten her keys. She

noticed that her car was gone, but she did not report it stolen until that night because she thought that the defendant and Mr. Lively would return it.

Officer Brad Lenderman of the Anderson County Sheriff's Department testified as follows: On December 23, 1997, around 4:45 p.m., he was at the corner of Clinton Highway and Racoon Valley Road, when he received a dispatch regarding a burglary in progress of a home on Racoon Valley Road and that the suspects had gone out the back door and were possibly going west. Within two to three minutes, he arrived at the location, and a woman stopped him at the intersection of Racoon Valley Road and Buck Lane, the first side road before the house. She told him that some people were running through her backyard and that there was a car parked on her street. He turned onto Buck Lane and saw a bright blue Pontiac Grand Am parked in the street. The car started to move away, but he blocked the street with his car. Two juveniles were in the car, and they were taken into custody. On cross-examination, Officer Lenderman admitted that he never saw the defendant in the area.

Investigator Daniel Barnes of the Anderson County Sheriff's Department testified as follows: On December 23, 1997, he investigated the robbery of the Williams' home. Behind the Williams' house was a large wooded area. Several officers helped search the area, but they did not find the three suspects for whom they were looking. Two pillowcases filled with items from the Williams' home were recovered from the area. The two juveniles that were in the car on Buck Lane were Adam Hacker, who was seventeen, and William Simpson, who was fourteen or fifteen. Tony Lively was taken into custody for the robbery/burglary several weeks later, and the defendant was found in Memphis several months later.

On cross-examination, Investigator Barnes admitted that he never saw the defendant in the area of the crime. He stated that he and the other officers searched the area within a perimeter of one to one and one-half miles wide and that officers also monitored the highways around the perimeter.

Adam Hacker testified as follows: In July 1998, he was adjudicated delinquent for facilitation of a felony, specifically for the December 23, 1997 burglary and robbery of Mrs. Williams. On December 23, 1997, at 1:00 p.m., the defendant, whom he had known for about a week, Tony Lively, and Thomas Dunham came to his house in a bright blue Grand Am and asked him if he wanted to get a haircut. He said that he did, and he went with them. The defendant drove the car to Applewood Apartments, where he entered the apartments, then returned and told them to come to his friend's apartment. As Mr. Hacker walked up the steps, everybody got behind him, and then the defendant grabbed him. He initially thought the defendant was playing, but the defendant cocked a gun and told him not to move. The defendant then took two hundred fifty dollars from his pocket and ran. He chased the defendant down and wrestled with him, during which, he hurt his knee. The defendant pulled out the gun again and told him to get into the car. The defendant gave him his money back and drove to a pay phone. The defendant told him to call his next door neighbor, William Simpson, and ask him if he wanted to ride around with them. The defendant still had a gun and told him that if he ran, he would shoot him. They picked up Mr. Simpson, and the defendant drove to a gas station and then to a sporting goods store where Mr. Lively bought three ski masks.

After driving a little longer, the defendant, Mr. Dunham, and Mr. Lively, who had pulled out a gun, asked Mr. Simpson where his grandmother lived. Mr. Simpson told them where her house was located on Racoon Valley Road. The defendant drove past the house and stopped on a side road. He told Mr. Hacker to drive the car and that if he did anything stupid, he would shoot him. They drove back down the main road, past the house, and turned onto another side road. The defendant, Mr. Lively, and Mr. Dunham got out of the car with their ski masks and guns and went into the woods behind Mr. Simpson's grandmother's house. About five minutes after they left, a police car pulled behind the car. He did not see the defendant, Mr. Lively, or Mr. Dunham after they left the car.

On cross-examination, Mr. Hacker testified that the defendant, Mr. Lively, and Mr. Dunham each had a gun. He admitted that he did not see where the three men went when they left the car. He said that he did not leave after the three men left the car because he feared for his life.

Tony Lively testified as follows: He pled guilty to the December 23, 1997 aggravated robbery of Patsy Williams and was serving an eight-year sentence in prison. He said that four other people participated in the robbery – Adam Hacker, a person named William, a person named Marcus, and someone whose name he did not know. He did not see the person named Marcus in the courtroom, but he said that his memory was vague because he, as well as the others, had smoked marijuana that day.

On December 22, 1997, Mr. Lively spent the night at Lee Ann Lively's apartment. When he awoke the next day, Marcus was there but Ms. Lively was not. He and Marcus took Ms. Lively's car and drove around smoking marijuana. At some point, they picked up a man named Thomas, whom he did not know. They then went to Adam Hacker's house and smoked some more. All four of them left Mr. Hacker's house and drove to Hunter Circle, where he, Marcus, and Thomas robbed Mr. Hacker. After talking, however, all four of them drove to a pay phone and then to pick up William, who was a friend of Mr. Hacker's. They then drove to Racoon Valley Road to rob a drug dealer. Mr. Hacker had brought a gun, which they had taken when they robbed him earlier, and William had also brought a gun. They parked on a side road, walked through the woods, and went inside the house. Marcus and Thomas each had a gun, but he did not. Marcus stayed with the woman in the kitchen while he and Thomas went to the bedroom to look for drugs. They did not find any drugs, but they took some money and jewelry, which they carried in pillowcases. They went out the back door and ran through the woods to meet the other two people with the car, but they were not there. He saw that the police were already at the house, so he dropped the pillowcase that he was carrying and ran. He did not know what Marcus and Thomas did at that point. On cross-examination, Mr. Lively stated that he probably could identify Marcus if he saw him but that he did not see him in the courtroom.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his convictions for aggravated robbery and aggravated burglary. He argues that the state failed to prove beyond a

reasonable doubt that he was the perpetrator of the offenses. The state contends that the evidence is sufficient.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978).

When viewed in the light most favorable to the state, the evidence reveals that the victim identified the defendant at trial as the perpetrator of the offenses. She testified that she saw the defendant's face before he pulled down his ski mask when he was standing outside her door and also when he pulled up his ski mask when she was on the kitchen floor. She said that she would never forget his face and that there was no doubt in her mind that the defendant was the person that was in her kitchen. <u>See</u> <u>State v. Strickland</u>, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (holding that an identification by the victim that the defendant was the perpetrator of the offenses was sufficient evidence by itself to establish identity). Moreover, Adam Hacker testified that he was with the defendant on the day of the offenses. He said that the defendant asked William Simpson where his grandmother lived, and Mr. Simpson showed him his grandmother's house on Racoon Valley Road. He testified that they then parked on an adjacent road and that the last time he saw the defendant was when the defendant, Thomas Dunham, and Tony Lively got out of the car with guns and ski masks and ran through the woods. From this evidence, a rational jury could have found beyond a reasonable doubt that the defendant was the perpetrator of the offenses. Therefore, the evidence is sufficient to support the defendant's convictions.

## II. HEARSAY TESTIMONY

The defendant contends that the trial court erred in allowing Officer Lenderman to testify that an unidentified woman told him that some people were running through her backyard and that a car was parked on her street. He argues that these statements were inadmissible hearsay and that the trial court erred in allowing them into evidence as an excited utterance. The state argues that the defendant waived this issue by not objecting to its admission at trial. We agree with the state.

Generally, when a party fails to object to the admission of hearsay testimony, the party waives the right to appellate review of the issue. T.R.A.P. 36(a). <u>But</u> <u>see</u> Tenn. R. Crim. P. 52(b) (allowing review despite a failure to object if the error is plain error). In the present case, the defendant objected just before Officer Lenderman testified about the woman's statements to him. After the objection, the state asked a series of questions to lay a foundation for the excited utterance exception to the hearsay rule of exclusion. <u>See</u> Tenn. R. Evid. 802, 803(2). After these questions and Officer Lenderman's answers, which provided that the declarant was upset and frantic, the defendant stated, "I object [to the state's] leading the witness all over the courtroom, Your Honor,

but I won't make any further objections concerning what the lady said." Accordingly, the defendant did not object to the admission of Officer Lenderman's testimony regarding the woman's statements to him, and thus, the defendant waived his right to appellate review of this issue. Moreover, we conclude that the admission of the hearsay statements caused no prejudice to the defendant and was not plain error.

### III. EVIDENCE OF A PRIOR ROBBERY

The defendant contends that the trial court improperly allowed Adam Hacker to testify about the defendant robbing him on the day of the offenses. He argues that the danger of the evidence's unfair prejudice outweighed its probative value. The state argues that the court properly allowed the evidence for the limited purposes of identifying the defendant and showing that a weapon was used.

Before Mr. Hacker testified, a jury-out hearing was held to determine whether he would be allowed to testify about the defendant, Mr. Lively, and Mr. Dunham robbing him earlier during the day on which the offenses were committed. The trial court ruled that the testimony was admissible "to show that there was in fact a weapon used and that these people were together and that they went to the places where the crime was allegedly committed." After Mr. Hacker testified about the robbery, the court instructed the jury as follows:

> We are not trying that crime, you understand, if it is in fact a crime. This can only be used for the purpose of identifying [the defendant]. Of course, it is up to you to determine what credibility you will give this witness. But whether or not [the defendant] had a gun and the relationship that day.

When a trial court follows 404(b)'s mandated procedures, the trial court's ruling allowing evidence of another crime will not be overturned absent a showing of an abuse of discretion. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). Because the trial court held a jury-out hearing, stated on the record the reasons he was allowing the evidence, and found that the probative value outweighed the danger of unfair prejudice, we apply the abuse of discretion standard.

Under Tenn. R. Evid. 404(b), evidence of other crimes is not admissible to prove a character trait of the defendant to show that he acted in conformity with that trait. However, evidence of other crimes is admissible "for other purposes" when it is relevant to a litigated issue such as identity, intent, or rebuttal of accident or mistake, and its probative value is not outweighed by the danger of unfair prejudice. See Tenn. R. Evid. 404(b); State v. Parton, 694 S.W.2d 299, 303 (Tenn. 1985). In this case, the trial court allowed Mr. Hacker to testify about the defendant, Mr. Lively, and Mr. Dunham robbing him on the day of the offenses to help establish the identity of the perpetrator as the defendant. Specifically, Mr. Hacker testified that the defendant held a gun to his head, took money from him, and then the defendant, Mr. Lively, and Mr. Dunham ran away.

In this case, identity was a litigated issue. Indeed, it was the defendant's primary theory of defense. The defendant does not dispute this but argues that the evidence should not have been

admitted under 404(b) because the evidence's probative value was outweighed by the danger of its unfair prejudice. Because identity was in issue, evidence that the defendant, Mr. Lively, and Mr. Dunham committed an armed robbery just a few hours before the armed robbery of Mrs. Williams was committed has probative value. While evidence of this other crime also presented a danger of unfair prejudice, we cannot say that the trial court abused its discretion in ruling that the evidence was admissible.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE