IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 6, 2015

**STATE OF TENNESSEE v. RODNEY WILLIAMS**

**Appeal from the Criminal Court for Shelby County**
**No. 12-01319      W. Mark Ward, Judge**

_____

**No. W2014-00251-CCA-R3-CD  -  Filed May 13, 2015**

_____

The defendant, Rodney Williams, was convicted by a Shelby County Criminal Court jury of aggravated robbery, a Class B felony, and was sentenced to twelve years in the Department of Correction. On appeal, he argues that: (1) the evidence is insufficient to sustain his conviction; (2) the trial court erred in allowing recordings of his jailhouse phone calls into evidence; (3) the trial court erred in admonishing him in the presence of the jury; and (4) the trial court erred in imposing the maximum sentence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Jennifer J. Mitchell (on appeal) and A. Brook Stevenson (at trial), Memphis, Tennessee, for the Defendant-Appellant, Rodney Williams.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pamela Fleming-Stark and Omar Malik, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of the robbery of the victim, Sondra Hankins, at gunpoint late the night of June 10, 2011. As a result of his involvement, the defendant was indicted for aggravated robbery.

The victim testified that she was living in an apartment complex in Memphis, Tennessee, on June 10, 2011. When she returned to her apartment around 1:00 a.m. that morning after going out with a friend, she was approached by a "tall, brown skinned man with a red Polo hat on; red shirt; blue shorts and he had a silver gun in his hand with a Black and Mild [cigar] in his mouth[.]" The victim later identified the man as the defendant in a photographic array, at the preliminary hearing, and at trial. The defendant was accompanied by another man, who stood in a position to block any escape. The defendant demanded that the victim "give [him] what you've got," and she threw her purse at him. The defendant then demanded the victim's cell phone as well. The victim got a good look at the defendant's face when she relinquished her phone. The defendant told her to leave and not look back, so the victim "walked off crying and . . . went in the house" and called the police. The victim stated that she had no doubt the defendant was the man who robbed her at gunpoint.

The victim testified that, on October 28, 2011, she received a phone call from someone saying that she would be paid if she did not go to court and that she had identified the wrong person. The victim informed the caller that they had the wrong person and then called the detective handling the case to report the call. The victim said that, the next day, she received a call from a woman who asked for her by her nickname. The victim asked the caller who she was looking for, and the caller said, "I'm looking for the girl that said my brother robbed her." The victim denied knowing what the caller was talking about, but the caller continued, inquiring about the victim's cell phone. The victim told the caller not to call again, and then she called the police.

The victim testified that when she was in the courtroom for the preliminary hearing, she recognized a woman from her apartment complex who was there for the defendant. The victim speculated that the defendant must have walked to the woman's house after the robbery because she did not hear him leave in a car.

On cross-examination, the victim said that it was dark at the time of the robbery, but there were lights on poles and buildings nearby that "shin[ed] on [the defendant] so [she] could see him." She was close enough to throw her purse at him.

Steven Lovelace, a former investigator with the Germantown Police Department, testified that he developed a suspect in the case and showed the victim a photographic array, from which she identified the defendant. Lovelace recalled that the victim contacted him on two different occasions and, based on that contact, he pulled tapes of the defendant's jailhouse phone calls. Lovelace said that it was unusual to receive a call from a witness complaining of having been contacted, which made the case more memorable to him.

Officer Juaquatta Harris, with the Shelby County Sheriff's Office, testified that she was responsible for gathering the recordings of inmate phone calls when requests were submitted to the office. She said that inmates used their assigned Record Identification Number ("RNI") when making phone calls in order to track their calls. However, when pulling records, she also looked for calls made when the particular inmate had access to the phone to numbers the inmate had previously called or was associated with because it was not unusual for inmates to use another inmate's RNI.

Over the defendant's objection, the State introduced into evidence portions of fourteen of the defendant's approximately 200 jailhouse phone calls.

Following the conclusion of the proof, the jury convicted the defendant, as charged, of aggravated robbery.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first challenges the sufficiency of the convicting evidence. He acknowledges that he does not argue "that there is no evidence to support [his] conviction; he merely argues that this evidence is insufficient to justify a rational trier of fact in finding him guilty beyond a reasonable doubt."

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe

3

their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" when it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. §§ 39-13-401(a), -402(a)(1).

In the light most favorable to the State, the evidence shows that the victim identified the defendant in a photographic lineup, at the preliminary hearing, and in court as the person who robbed her. At trial, the victim testified that the defendant took her purse and cell phone without her consent at gunpoint. The identity of the defendant as the perpetrator of the offense is a question of fact for the jury. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). The identification testimony of the victim is sufficient, alone, to support a conviction. Id. In addition, audiotapes of the defendant's jailhouse telephone conversations detailed the defendant's attempts to evade the police and to prohibit the victim from testifying. We conclude that the evidence is sufficient for a rational trier of fact to find that the defendant committed the aggravated robbery of the victim.

## II. Jailhouse Telephone Recordings

The defendant argues that the trial court erred in admitting recordings of his telephone calls from jail because they were unfairly prejudicial and had no probative value.

In considering this issue, we apply the rule that "admission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion." State v. Robinson, 146 S.W.3d 469, 490 (Tenn. 2004). See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). A trial court's exercise of discretion will only be reversed on appeal if the court

4

"'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Robinson, 146 S.W.3d at 490 (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

When determining admissibility, a trial court must first decide if the evidence is relevant. Tenn. R. Evid. 402 ("All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible."); Robinson, 146 S.W.3d at 490. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Tenn. R. Evid. 403.

Tennessee Rule of Evidence 404(b) provides as follows:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Where the trial judge has substantially complied with procedural requirements, the standard of review for the admission of bad act evidence is abuse of discretion. DuBose, 953 S.W.2d at 652. Because the trial court in this matter complied with the requirements of Rule 404(b), we review its rulings under an abuse of discretion standard.

5

Here, the defendant argued that the recordings of his jailhouse phone calls were irrelevant, to which the State responded that all of the calls were relevant to either show flight, guilty knowledge, or attempts at witness intimidation. The trial court conducted a hearing in accordance with Rule 404(b) and determined that the tapes were relevant to establish witness tampering, flight, or consciousness of guilt. The court further determined that the relevance of what was on the tapes was not outweighed by the danger of unfair prejudice to the defendant. The court specifically addressed one tape in which reference was made to a pending possession of marijuana charge and concluded that "the relevance that this consciousness of guilt evidence shows" was not outweighed by any danger of unfair prejudice.

We discern no abuse of discretion in the trial court's determining that the probative value of the tapes outweighed the danger of unfair prejudice to the defendant. The defendant's identity was the primary issue at trial and the jailhouse phone calls were corroborative evidence of the victim's identification. The recordings provided evidence that the defendant evaded arrest and sought to silence the victim, which are indicative of his consciousness of guilt and tend to corroborate his identity as the robber. Furthermore, the trial court specifically instructed the jury of the appropriate use of such evidence. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the tapes into evidence.

## III. Admonition

The defendant argues that the trial court erred in admonishing him in front of the jury. He asserts that the trial court's treatment of the situation "was harsh given that he explained what he was doing and that there had been no previous interaction . . . which would have given the court reason to continue to admonish [him] in front of the jury." He does not explain what relief he wants for the supposedly "harsh" admonition, or what grounds of authority that would entitle him to such relief. The only authority he cites recognizes the trial court's authority to maintain proper courtroom decorum when confronted with a disruptive defendant. Insofar as the defendant has not cited any authority for his argument, it is waived. See Tenn. R. App. P. 27(a)(7).

In any event, the trial court did not err when it admonished the defendant for causing a distraction at trial. From the record, it appears that the defendant was shaking his head and making faces during the victim's testimony, and the trial court asked him to stop. The record reflects the following exchange during the victim's direct testimony:

> The Court: Excuse me sir, you can testify when you get a chance to testify when you want to, but you can't s[i]t back there and make faces or

6

expressions during the course of this trial. Okay sir, can you sit there quietly without doing that?

Defendant Williams: I didn't say nothing, all I was doing was praying. I didn't say nothing.

The Court: Sir?

Defendant Williams: I said, I wasn't doing no facial expressions, or nothing I was just praying, I didn't mean no harm, seriously.

The Court: Well, you're shaking your head while this lady's testifying.

Defendant Williams: Okay, I didn't mean no harm.

The Court: But you can't make – you can't make any reference to what the witness is saying. Do you understand that?

Defendant Williams: Yes, sir.

The Court: All right, so you have to sit there quietly and not do that.

Defendant Williams: Yes, sir.

The Court: All right?

Defendant Williams: Yes, sir.

In Illinois v. Allen, 397 U.S. 337 (1970), the United States Supreme Court discussed the trial court's maintenance of decorum in the courtroom:

It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

Id. at 343.

7

We cannot conclude that the trial court's brief and concise admonition of the defendant during the victim's testimony was beyond the discretion given to trial courts in maintaining proper courtroom decorum.

## IV. Sentencing

The defendant lastly argues that the trial court's imposition of the maximum sentence was in error because the court improperly applied and weighed the enhancement and mitigating factors.

Under the 2005 amendments to the sentencing act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

>    (1) The evidence, if any, received at the trial and the sentencing hearing;

>    (2) The presentence report;

>    (3) The principles of sentencing and arguments as to sentencing alternatives;

>    (4) The nature and characteristics of the criminal conduct involved;

>    (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

>    (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

>    (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly

8

addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

In sentencing the defendant to the maximum term of twelve years, the trial court found that the defendant had prior convictions beyond that necessary to establish his range, noting the defendant had "a couple of [prior] misdemeanor[]" convictions but "most importantly, he has this prior aggravated robbery . . . then be convicted of an aggravated robbery again. I think that's a very serious matter." See Tenn. Code Ann. § 40-35-114(1). The court acknowledged as a mitigating factor the defendant's girlfriend's testimony that he supported her and their children. See id. § 40-35-113(13). The court noted that the defendant admitted to "running a prostitution ring or being a pimp," and that he failed to accept any responsibility or show remorse for robbing the victim. The court also noted the contents of the defendant's jailhouse phone calls, which indicated a lack of potential for rehabilitation.

The record reflects that the trial court imposed the sentence after proper consideration of all the evidence and testimony, the purposes and principles of our sentencing act, and consideration of the enhancement and mitigating factors. See Bise, 380 S.W.3d at 706. In light of the presumption of correctness attendant to the trial court's findings, we discern no abuse of discretion in the trial court's imposition of a term of twelve years.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE